HeMpitill, O. J.
The petition alleges that on the twentieth day of September, 1836, at Natchez, in the state of Mississippi, Samuel W. Punchard, a resident of that place, conveyed to James B. Creecy a large amount of property, among which were certain negroes therein *(155) named to secure to Herman, Briggs & Co. a large debt due from Punchard to that firm. That by the deed Herman, Briggs & Co., or either of them, were authorized to substitute, on certain contingencies, some other person as trustee in piece of Creecy, and that the plaintiff has been substituted.
That by the laws of Mississippi the title to the property vested in said trustee, and that the negroes mentioned in the deed are in the possession of Josiah J. Crosby, who refuses to deliver them to the petitioner. A citation is asked against the said Crosby, and that he be ordered to deliver the said negroes to the petitioner, to enable him to execute the trust; and that the defendant be condemned to damages for their detention; and whatever else is right, equitable and just, is prayed for. The deed of trust and the acts of substitution were filed as a part of the petition. The deed is made between Samuel W. Punchard, of the first part, James B. Crosby, of the second part, and Louis P. Herman, Charles Briggs and Charles A. Lacoste, of the third part, and is executed for the purpose of securing to the said Herman, Briggs and Lacoste, the payment of a note of hand for twelve thousand one hundred and twenty-eight 9-100 dollars, at its maturity, on the 19th March, 1837; and also to secure all future advancements, indorse-ments and acceptances, which before that date may be made by the said Herman, Briggs and Lacoste, in favor of the said Punchard.
The instrument conveys to the trustee fourteen hundred acres of land in the county of Tazoo, thirty-eight slaves who are named in the deed, the crop of cotton, corn, etc., 16 head of horses and mules, 2 wagons, 50 head of cattle, farming utensils and household and kitchen furniture, together with all the appurtenances of the land and the future increase of the female slaves. It was agreed that Punchard should remain in possession of the property and take the profits thereof to his own use, until default made in payment of the said liabilities, either in whole or in part; and that so soon after default as the trustee may think proper or the cestui que trust shall request, the said trustee shall sell the whole of the property or such part thereof as he may think sufficient for the purposes of the trust, and the balance, if any, of the proceeds after paying the sums secured and all proper charges, shall be paid to the said Punchard. But if no default be made in payment on the 19th March, 1838, then the deed to be void and of no effect.
No citation was issued to the defendant nor were any defensive pleadings filed on his part. Documentary and other proof was adduced to some portions of which we will refer for the purpose of rendering some of the subsequent parts of this opinion the more easily *(156) understood. The note of hand and the other liabilities secured by-mortgage amount to something more than $12,800.
The plaintiff is substituted as trustee by two several acts, one signed by Charles A. Lacoste, and the other by Louis F. Herman and Charles Briggs.
The deed of trust and acts of substitution were admitted without proof by defendant. The deed was recorded in Harrisburg county on the 27th December, 1838. The first act of substitution was recorded in the same county on the 1st January, 1839. The second act of substitution was executed on the 5th of February of the same year but was not recorded. Notice in writing of the deed of trust was given to the defendant on the 26th December, 1838. A bill of sale executed 24th November, 1838, by Samuel W. and "William Punehard, conveying certain slaves to the defendant, was offered in evidence by him; and fourteen of the slaves mentioned in it were afterwards proved by the said William Punehard to be a portion of the slaves embraced in the deed of trust. The witness proved also that the consideration for the sale to Crosby was a demand held by him as the attorney of Bul-litt, Shipp & Co. against Samuel W. Punehard, and that the said liability was discharged by the execution of the bill of sale. This evidence was introduced by the plaintiff, who further proved that Samuel W. Punehard resided in Yazoo county, Mississippi, in September, 1836; that the negroes were in his possession at that time; that his departure from Mississippi was sudden and clandestine and that he arriyed in Austin county, Texas, with the negroes on the 10th February, 1838; that on the 27th December, 1838, he resided in Harris county and that some of the negroes mentioned in the deed of trust were in possession of the said Samuel or of some other person in that county at that time. Witnesses were introduced for the purpose of proving notice to the defendant of the deed of trust previous to the purchase of the said slaves. It was proved also that one of the partners of Bullitt, Shipp & Co. resided in Natchez, and that in the summer of 1838, in a conversation with a witness he said he was getting along very well with the Punehard claim; that the negroes had been seized and that it now appeared that Briggs & Lacoste, or that Briggs, Herman & Go. had a deed of trust on the property, but he thought he would be able to secure his debt. A trial by jury was waived and the cause being submitted to the judge, he decreed that the plaintiff should recover from the defendant possession of the fourteen slaves named in the judgment or the sum of eight thousand three hundred dollars, the value of the said slaves, and also two thousand three hundred dollars for their hire.
*(157) A motion was made by tlie defendant for a new trial on tbe ground, as stated in his affidavit, of evidence discovered since the trial which would defeat the recovery of the plaintiff. That he had been informed by William Punchard, one of the witnesses of the plaintiff, that the debt on which the suit was predicated had been nearly if not wholly satisfied, and that evidence of the fact could be obtained in Mississippi; that he could not testify to it while on the stand, because he did not know of his own personal knowledge, but from the representations of others in whom he had confidence; that Mr. Carrodine, another of the plaintiff’s witnesses, had informed him that he was present at a sale of some of the property included in the trust deed and that Briggs, Lacoste & Co. had disposed of a large amount of cotton included in said deed. That deponent had in his possession a newspaper which was received since the trial, published at Benton, Mississippi, entitled the “Yazoo Banner,” dated May the 29th, 1840, containing an advertisement, dated April 10, 1840, by Charles E. Mount, trustee by substitution of the plantation and other valuable property included in the trust deed; and that he had been informed that the sale had actually taken place; and that Briggs, Lacoste & Co., or their agent, purchased the same; the proceeds of all of which sales he alleged should be appropriated to the payment of their debt. He also produced the affidavits of George M. Carrodine and E. M. Adcock, who swear that they were present sometime in the year 1838, at a sale of a large amount of cotton, pork and plantation utensils belonging to Samuel W. Punchard, which were sold under the trust deed and the sales of which amounted to between $2,500 and $3,000.
The motion for a new trial was overruled.
The positions which have been assumed in this court have been argued with great ability and research, and our acknowledgments are due to the counsel for the mass of valuable information embodied in their luminous arguments, and which have materially elucidated such of the points as have come under our examination.
At the very threshold, however, of our inquiries, we are met with ■difficulties which are not ordinarily presented, especially where such important interests are involved.
The defendant is not cited, no answer is filed by him, and the first intimation of his appearance in the cause is by his admission of certain documents offered in evidence by the plaintiff, and his production of a bill of sale of the slaves executed by the Punchards, and which was admitted by the plaintiff without proof. The suit appears to have been conducted, at least in the commencement, in an amicable manner and according to the most liberal practice; and judg *(158) ing from the record, both parties appeared willing to invoke the action of the court without throwing much light on the true merits and real condition of their respective claims, and some of the principal questions involved in the controversy. The plaintiff did not prove some of the most material facts necessary to support his suit, and the defendant made no attempt at proof except his bill of sale and his objections to most of the evidence offered by the plaintiff.
From the voluntary appearance of the defendant without a citation, from his consent to admit the deeds of the plaintiff without proof and a similar admission of his bill of sale by the plaintiff, and from the course of the evidence, it is plain that both parties considered that issue was joined in the controversy, and that a general denial was put into the respective claims of either party.
But our conclusions on some of the principal questions are irrespective of any plea on the part of the defendant, and are founded on the pleadings of the plaintiff and on the evidence which was before the court.
It is insisted that the court erred in maintaining the suit, as the authority on which the complainant relied to authorize him to prosecute it was insufficient; and the act of substitution having been made a part of the petition, its invalidity could be seen by the court.
The appellee contends that as the objection was not taken below, it is now too late to urge it, and it should not be considered by this court.
It is true that this exception, operating if sustained as a complete bar to the suit, should have been urged in the lower court; but if it be apparent from the record that there is no authority in the plaintiff to maintain the suit, there is no principle of law which would authorize us to decline the consideration of the objection, or to adjudicate upon the merits of a cause either in favor of or against a stranger to the rights involved in the controversy.
The neglect of the party to except at the proper stage of the proceedings deprives him of all rights except those stricti jtvris, and his objections when urged here for the first time will be heard only to prevent an obvious violation of the principles of law and justice. 6 ,Pet. 402.
That this objection was not taken and considered below may perhaps be in some measure attributed to the plaintiff. The petition alleges that Herman, Briggs & Co., or either of them, were authorized to substitute a trustee. It is true that the deed was filed; and the error of the averment that either of them could execute the substitution might have been detected on an examination of the contents of *(159) tbe instrument. It is possible, however, that the allegation of the petition may have diverted attention from the particular point; and that it thus escaped the notice of the defendant or the court.
The substitution was made by two separate instruments, one executed by Charles A. Lacoste, who signs for himself and as attorney of Herman and Briggs. The original deed of trust had been executed by Lacoste for himself and as attorney for the other partners, and he doubtless supposed that any joint act authorized by the instrument could be done in the mode by which the deed itself was executed. Afterwards, on the 5th February, 1839, another letter of substitution was drawn up in terms identical with the former, and was signed by Herman and Briggs but not by Lacoste.
Do these two instruments taken together constitute a sufficient execution of the power conferred by Punchard on the cestui que trust.
The authorities show clearly that the conditions and solemnities annexed to the execution of a power must be strictly complied with, however unessential they might otherwise have been; that their observance is indispensable and can admit of no equivalent or substitution.
In 1 Burrow’s Reports, p. 121, it is laid down by Lord Mansfield, “ that the intent of the parties who gave the power ought to govern every construction.” “He to whom it is given has a right to enjoy the full exercise of it. They over whose estate it is given have a right to say it shall not be exceeded, the conditions shall not be evaded; it shall be strictly pursued in form and substance; and all acts done under a special authority not agreeable thereto nor warranted thereby must be void”.
In Story on Ag. p. 46, it is stated to be a general rule of the common law “ that where an authority is given to two or more persons to do an act, the act is valid to bind the principal only when all of them concur in doing it; for the authority is construed strictly, and the power is understood to be joint, not several.” Reference is there; made to 3 Pick. 322; 2 id. 345; 12 Mass. 185. Indeed so strictly is the authority construed that if it be given to three persons jointly and severally, two cannot properly execute it, but it must be done by one or by all. (Same work and page.)
The power in this instance is not coupled with any special forms or conditions to be observed in its execution. The parties are not required to sign the appointment at the same time, or to unite in the same instrument for that purpose.
This would have been the more approved mode, but where we have *(160) satisfactory proof that all the donees of the power have concurred in its execution, though by separate instruments, we think that the intent of the grantor has been carried out.
Had the second instrument been indorsed on or attached to the first, or had Herman & Briggs adopted and ratified the first by affixing their signatures thereto, such an act would certainly have constituted an appointment in pursuance of the terms of the power. JBoth instruments refer to the trust and to the power by virtue of which they > were executed.
Among the authorities cited and accessible to the court, I have not found any case in which the precise, question raised here was determined. The point resolved in the decided cases most analogous to the present is where it had been holden that a power may be executed at different times and over different parts of the estate, so that the party do not in all the executions exceed the limits of the power.
In this case the donees of the power live in different states. Would it be contended that if the instrument of substitution had been executed by Lacoste at Natchez, and by Herman and Briggs in New Orleans, that this would not be a valid execution of the power? The act or assent of Lacoste could separately confer no authority; but united with the concurrent action of the other donees, the joint act of all the parties was completed; and the substitution had received all that was required, viz.: the assent of all the donees of the power.
Each of these acts was drawn in conformity with the terms of the grant; and had either of them been signed by all the parties, the conditions would have been fully satisfied. The signature of all the parties was the only requisite wanting to the validity of either. Had they both been executed at the same time, one by one partner and the other by the others, there would not, in reason of law, appear to be any circumstance wanting to tire full execution of the power. The acts of all the parties in the substitution possessed identically the same nature, character and qualities; and the instruments were, expressed in the same identical terms; and we are of opinion that though this mode of execution‘was loose and irregular, yet it was sufficient in law and was a substantial compliance with the intent of the grantor.
Both refer very clearly to the trust deed, but with a mistake in the date. In both the deed is referred to as of the thirtieth, whereas it is of the twentieth September. This we deem but a clerical error, and insufficient to invalidate the act.
Authorities were cited to show that defective executions of powers were remedied in equity as in favor of creditors; and that the power *(161) being vested in them as partners, and relating to partnership business the action of one on certain contingencies in the execution of the power would have been sufficient.
These propositions present very interesting subjects for investigation, but a decision upon them being unessential they will be passed without further observation.
It is contended that the appellee onght not to be permitted to interfere with the right of the appellant, having suffered the trust to remain so long unexecuted after the condition broken. The possession of the property being unchanged, the claim of the mortgagees became a mere equity, not superior to the appellant; and that in fact the cestui que trust forfeited all rights as against others than the mortgagor, by permitting the pi-operty so to remain, as it enabled him to gain credit with others in consequence of his apparent ownership.
To the satisfactory determination of the questions raised on this ground, and to the application or establishment of legal principles in relation to the character of the whole transaction, embracing as well its inception as the subsequent conduct of the parties; there are very serious obstacles arising from the fact that there was no such point raised or decided below, and none of the evidence being directed to the issue now made, we are left almost entirely to presumptions as to the real facts of the transaction, although upon these depends the solution of the charge of fraud, which is now urged as destructive to the claims of the appellee.
Upon the same grounds, however, that required an examination of the former objection, and because from the facts urged again as they are, the presumption of the fraud now charged arises as a legal inference, we cannot decline a consideration of the objection.
What are the facts on the record relative to this point and what are the presumptions thence arising?
That portion of the mortgaged negroes, about which this suit was. instituted, is proved to have been in possession of Samuel W. Pun-chard, in Yazoo county, Mississippi, in September, 1836, the month' in which the deed of trust was executed; that he, Punchard, arrived in Austin county with the negroes on the 10th February, 1838; that his departure from Mississippi was sudden and clandestine; that he resided in Harris county on the 27th December, 1838, and that he or some other person in that county at that time had possession of some of the negroes mentioned in the deed of trust. This evidence' was introduced by the plaintiff. The deed authorized Punchard to-retain possession of the mortgaged property until the forfeiture - of the condition on the 19th March, 1837; and that then the trustee^.as. *(162) soou thereafter as lie should think proper, or the eestuis que trust should request, should sell the whole of the mortgaged property or as much thereof as would be sufficient to discharge the debt.
There is not a scintilla of positive evidence to show whether Pun-chard did remain in possession of the property until forfeiture; whether he afterwards retained possession; whether there was any attempt by the trustee to take possession and execute the trust; whether and by what circumstances lie was prevented; whether all the property except the fourteen negroes now sued for had been sold, and the proceeds were insufficient to satisfy the debt. And if the sale had not taken place, what was the excuse? There is a space of near seventeen months next succeeding the execution of the mortgage, and nearly eleven of which transpired after the condition was broken, within which the acts of the parties are not proved, although upon these materially depended their rights.
"We know from the trust deed that on and after the 19th March, 1837, the trustee was authorized to sell 1,400 acres of land, 38 negroes, crop of cotton, corn, etc., 10 head of horses and mules, 2 wagons and 50 head of cattle, farming utensils, and household and kitchen furniture, for the payment of the plaintiff’s debt of between $12,000 and $13,000, but from that time, or rather from the day of the execution of the mortgage six months previous, we hear nothing of any part of this property, or of the acts of the parties to the deed, until the 10th February, 1S3S, on which day the mortgagor, Punchard, arrived in Austin county, Texas, with fourteen of the negroes.
Again, it is proved by the plaintiff, that these fourteen negroes were sold to the appellant for the sum of sixteen thousand dollars, all of which, except $140 or $240, was due from Punchard to the firm of Bullitt, Shipp & Co., in New Orleans. . But we have no evidence of the date of the claim by which the rights of the claimants might possibly have boon affected. Again it was contended that the claim of Bullitt, Shipp & Co. was strengthened by an attachment of the property.
There is no distinct evidence of this attachment in the record. From the whole of the evidence we might perhaps conclude that the property was seized and that there had been a suit against Punchard. But to presume also the character of the suit would be stretching the presumption beyond its legitimate sphere.
The presumptions, however, arising from such facts as are disclosed on the record, militate against the plaintiff. From these it appears that Punchard, in September, 1836, was in possession of and mortgaged property exceeding in value by several times the amount of the *(163) debt secured; that he was to retain possession until Mai-ch, 1837; that nearly eleven months afterwards he 'arrived in Austin county with fourteen of the negroes, comparatively but a small amount of the mortgaged property.
From these facts unexplained, the presumption arises that the debt was either paid at maturity, or that a sufficient amount had been sold in payment of the debt, or that Punchard was permitted to remain in possession after the forfeiture of the condition, and under shelter of the mortgage, secure undue advantages to himself, to the prejudice of his creditors, and to complete arrangements for abducting the property to a foreign country, where it could not be pursued and recovered without greatly increased trouble and expense.
The history of judicial proceedings will, we imagine, furnish but few instances where in a struggle between creditors or between a creditor and a subsequent purchaser, such an instrument as this deed of trust coupled with the acts of the parties, has not been challenged as fraudulent and void as against the rights of third parties, or when the plaintiff has not supposed it his imperative duty to repel the unfavorable presumptions arising out of the transaction.
But had all the presumptions against the instrument been repelled by testimony deemed sufficient in law for that purpose, had the case taken the ordinary course and had it been decided that the deed in connection with extrinsic circumstances was fraudulent per se, or that it was evidence of fraud and susceptible of explanation, or had the decision been otherwise, in favor of the transaction as founded on good consideration and as bona fide, we would still labor under the difficulty of not knowing under what system of laws the case had been determined.
But granting that this is immaterial and that we have the power to determine the matters involved on the principles of all the laws or systems of jurisprudence applicable to the transaction and to the rights of the parties before the court, yet the laws of Mississippi are not proved as facts in the record, nor have we been referred to, or had access to any of the statutes or laws of that state.
We do not know judicially whether the common law of England prevails there, and if so, under what modifications; whether the statutes of the 13th and 27th Elizabeth or similar laws have been adopted.
Where the validity, nature, obligation and interpretation of a contract depend on the laws of a foreign country, these laws must be proved before they can become guides for judicial action.
It is true that where the. foreign law is not established by proof, the *(164) rights of tlie parties must be determined by our own laws, for tbe plain reason that they present the only known role of decision.
But supposing that the necessary facts were proven and that we were competent or had the leisure to trace the doctrines in the system of Spanish jurisprudence on this subject, without the aid of thorough and judicious researches of counsel directed to that object, a decision made on these principles would operate as a surprise upon the parties, and might materially affect their rights as accruing under the lex looi of the contract. But few of the proper authorities are in fact accessible to the court. Under these circumstances we will not undertake to determine the controversy and establish not the real rights of the parties, but what they would have been had the whole transaction and the acts of all the parties transpired in this republic, before the introduction of the common law.
The points raised have never been decided in this conn try, and a decision based on our former laws must involve important rights as secured or fixed under those laws, and will not be made without argument or at least an opportunity for investigation.
On the question then which has been mainly insisted on in argument, viz.: That the instrument if valid in its inception became by the subsequent conduct of the mortgagees fraudulent and void as to third persons, creditors and purchasers; we are without either the facts or the law essential to its correct adjudication.
Our judgment would be based on presumptions both as to the facts and the law if rendered on the laws of Mississippi.
It is urged that the instrument itself presents sufficient viidieia of fraud to vitiate it without the production of extrinsic evidence. No opinion is intended to be expressed of the character of the instrument, except that it is not void on its face, without reference to facts and circumstances connected with the transaction. For instance, no objection could be urged to the provisions of this instrument, except there were other claims on the property. Its validity must then depend (to some extent at least) on extrinsic circumstances, about which we are not sufficiently informed to authorize a decision. The facts connected as well with the claim of the opposing creditor as with that of the mortgage and with the transaction at its inception, and the acts of the .beneficiaries under the instrument, ought to be more fully known before the character of the deed be definitely determined.
The case will be sent down for a new trial; and it is our intention that it shall be remanded without prejudice to the rights of either *(165) party. But the proper course of proceeding, where the presumption of fraud in a controversy of this character arises out of the evidence, was so totally misapprehended at the former trial that we think it necessary to refer to certain well established principles of law on the subject; not for the purpose of concluding the parties, but that the canse may be adjudicated on its merits.
As stated in a former part of the opinion, the presumptions from the proof adduced by the plaintiff were unfavorable to his claim.
The property mortgaged exceeded greatly in value the amount of the debt. The negroes alone, estimated at the rate of the valuation of the fourteen recovered in this suit, exceeded the debt by nearly ten thousand dollars. This disproportion between the provision and the object was a suspicious circumstance. See Benton v. Thornhill, 6 Taunt. 149; also see note to 3 Cow. p. 192-3, referring to Godbolt, 161, and Long on Sales, p. 78.
The deed in its sweep embraces articles of a perishable nature, and the presumptions against its fairness are thereby increased. 3 Yerg. 503; 4 id. 560; 4 Ala. 374. The debt being due on the 19th March, 1837, the presumption is that it was then paid or that property was sold for its satisfaction. The plaintiff also proved that the claim of the defendant as a creditor of Punchard was of a still larger amount than his own.
These presumptions are deductions of law arising from the facts; and it was incumbent on the plaintiff to have rebutted them, and to have wiped away all suspicions of unfairness from the transaction. There being no attempt made by the plaintiff to repel the unfavorable presumptions arising from the proof, it was not incumbent on the defendant to take the first step, and prove facts to strengthen and establish these presumptions. The facts in the record being admitted, the defendant was not compelled in the first place to prove continued possession after forfeiture of the condition, or that the debt was paid, or satisfied by sale of the property, or facts of a similar character.
It was the duty of the plaintiff to have shown the reverse; or to have satisfactorily explained such facts if they were true. The whole cause was submitted to the court. The presumptions adverse to the deed of trust might have been considered by the judicial mind, and had any force been allowed to them, it might have been a surprise on the parties, but could not have been regarded as error.
No expressions in this opinion are to be construed as trammeling the action of the district court in the decision of any of the questions arising out of the charge of fraud; we only decide on this point that *(166) the presumptions were adverse to the plaintiff, and it is the imperative duty of a party in a judicial proceeding to repel himself all legal inferences against his pretensions; but whether the deed, coupled with extrinsic circumstances which may be proven, shall be regarded as fraudulent and void in law, or whether as only presumptive of fraud, the limits of which presumption the court may attempt to define; or to decide what facts shall be proven before the presumption shall be rebutted; or whether the fraudulent intent shall be regarded as a question of fact, and that it is for the j ury to decide whether there was any actual intent to hinder and delay creditors, or whether the presumption has been disproved by the clear manifestation of good faith throughout the transaction. These and other similar points are left to the uncontrolled action of the lower court.
These questions have for ages been the subject of vexatious and protracted discussions. Great authorities and enlightened courts have differed widely as to the rules and principles by which the decision of such questions should be governed, and these rules, when established, have been subjected to so many subsequent modifications that they are almost obliterated by the multitude of exceptions. Weighty as would be the responsibility of settling principles for the determination of such points, we should not hesitate to make the attempt were the necessary facts before us, and the law from which those principles must be adduced, presented for examination. There would be no propriety, however, in laying down legal principles where both the law and the facts are hypothetical.
The rule that the nature, validity or invalidity, the obligation and interpretation of this deed of trust should properly be determined by the laws of Mississippi, is not to be extended to the defeat of our own laws, or any rights growing out of them after the property was found within their jurisdiction. For instance, - the laws of Spain provide “that if the pledgor, before he deliver the thing to the pledgee, should give, sell, pledge, alienate and deliver it to another person, the first pledgee may demand of the pledgor all that he had given him on the account of the pledge, and if he can recover it from him, he ought to leave in peace the second pledgee, who is in possession of the thing.” Partidas, 5, tit. 13, 1. 14; 3 Sala, p. 15; Institutes of Asso and Manuel, b. 2, tit. 7, p. 141. Sala, in his “.Derecho Peal,” in the passage above cited says, that the creditor in this instance must pursue the same course that he would adopt against a surety, and that he must first reconvene the debtor who contracted the obligation.
This rule is subject to the modification that where a creditor shall *(167) have commenced suit for the thing pledged against the debtor before the sale takes place, it shall then be at the option of the creditor to demand the debt of the debtor, or the thing pledged from the person in possession. Vide, words above referred to.
From the analogy of the condition of the vendee to that of a surety, the rule could not, by fair construction, be considered imperative where the mortgagor was insolvent or beyond the 'jurisdiction of the court; but this ought to be alleged and proven. It might possibly, in its practical operation, be subject to other modifications, designed for the suppression of fraud and contrivance between the mortgagor and purchaser as against the mortgagee. But it is useless to speculate on the modifications by which the rule may be qualified; our object is to direct the attention of the parties to the laws upon which the cause ought to be decided, should this provision of the law be considered as applicable when the facts are before the court, and that it was not abrogated in effect by any law in existence at the time of the sale, the vendee will be entitled to retain the possession until the property of the debtor is discussed, and being so entitled, he will a fortiori be entitled to claim the possession until the remainder of the property originally pledged is sold in payment of the mortgage liability, or satisfactory excuses rendered why it should not be done.»
In countries governed by the common law, the trustee could be compelled to apply the fund to the extinguishment of the mortgage debt; and to pay over the overplus to other creditors, at least those who had acquired a lien on the property, and all the waste of the property arising from the continued, permitted possession of Punch-ard, would be thrown on the mortgagees. 3 Ycrg. 541.
We do not decide any points as to the obligation, limits or construction of the rule. It was not adverted to in the argument and the questions are left open for future decision.
On the trial exception was taken to the admissibility of any other evidence of the existence of the deed of trust, than that of its proper registration in Texas, on the grounds that deeds of trust and mortgages were binding only on .the parties until they are recorded, etc. The court overruled the motion and decided that the record of the deed of trust in Mississippi was notice to all the world.
In reference to the effect of registration in Mississippi, it is to be observed that there was no proof of the existence of any registry law in that state, or of its provisions, nor any evidence that the registration was in conformity with that law.
The record of a conveyance does not ipso facto operate as a constructive notice to subsequent purchasers. This legal consequence *(168) results only from the registration of such conveyances as are authorized and required by law to be registered and are duly registered in compliance with the law; where their registration is not authorized or is not in conformity with law, it is treated as a nullity. 1 Story Eq. p.;406; 2 Stewart, p. 339.
But whatever may have been the effect of registration in Mississippi, it cannot be extended beyond the territorial limits of the state. The operation of such a municipal regulation is local and cannot affect property in a foreign jurisdiction. 6 U. S. Con. 356.
Whether any evidence of the existence of the deed of trust other than that of its proper registration in Texas was admissible is an important question, and will be considered in the most favorable point of view for the plaintiff, and that is on the supposition that the contract was made in this country, and that all the parties in the controversy were citizens of this republic.
The appellant contended that the admission of any other evidence was in contravention of the 4th section of the “act organizing inferior courts, and defining the power and jurisdiction of the same: Approved December 20, 1836.”
That section is expressed in the following terms, viz.: “No deed, conveyance, lien or other instrument of writing, shall take effect as regards the rights of third parties, until the same shall have been duly proven and presented to the court as required by the act for the recording of land, titles, etc.”
Were this provision presented to a mind unbiased or unenlightened by the construction of judicial tribunals on similar statutory regulations, the conclusion would most probably be, that a conveyance not duly proven and presented could no more affect the rights of third parties, than if it had never been executed. That proof and presentment were as essential to its operation on these rights, as was the execution itself to the instrument. But it has been the settled doctrine in the courts of the United States and in the courts of equity in England, in the exposition of statutes requiring conveyances to be registered in order to make them valid titles against subsequent purchasers, that if the subsequent purchaser has notice at the time of his purchase of any prior unregistered conveyance, he shall not avail himself of his title against that prior conveyance. All such laws are regarded as designed to protect creditors and purchasers against prior secret conveyances and incumbrances, and that where there was actual notice of such prior conveyances, the purpose of the law was fully accomplished, and that the reason of the law ceasing, the law itself became inoperative and its sanctions would not attach.
*(169) This construction of such statutes has arisen from the strong determinations of the courts that frauds should be suppressed; and as the policy of the registration acts has thus, to a great degree, been counteracted, it has been so far qualified that the letter of the statutes will be departed from only “ where the notice is so clearly proved, as to make it fraudulent in the purchaser to take a conveyance in prejudice to the known title of the other party.” 19 Vesey, 439; 1 Story Eq. Jur. secs. 397-8; Sug. Yend. ch. 16, sec. 1, 10, ch. 17; 2 N. &. McC. (S. C.) 105; 2 McC. 273; 4 Pick. 253. ‘And this liberal construction of the terms of such statutes is designed to guard against the fraud; but is not to be perverted to the injury of the second purchaser. 4 Mass. 534.
Mr. Justice Story, in his treatise on equity, p. 399, says: “It has been greatly doubted whether courts ought ever to have suffered the question of notice to be agitated as against a party who has duly registered his conveyance.” Some of the most enlightened judges have contended that such an exposition was an usurpation of legislative authority, and a disregard of the positive enactments of law; that instead of the rights of third parties reposing on the stable foundations of certain and positive law, they were involved in all the uncertainties of evidence as to whether notice had in point of fact been given; and of judicial exposition as to what facts shall constitute evidence of notice. 1 McC. 105. The construction has, however, been long otherwise; and we must suppose that this was present to the legislative mind at the adoption of this regulation, and had the intention been to exclude such exposition, it would have been manifested in express terms or in language from which such would have been the unavoidable implication.
In conformity with this generally received rule of construction, we are of opinion that under this provision of law the proper registration of the deed of trust in Texas was not the only admissible evidence of its existence so as to affect the rights of a third party or subsequent purchaser.
Whether the appellant had received such clear notice of the existence of the trust deed as a valid subsisting claim on the property, as rendered his subsequent conveyance fraudulent as against the other party, it is not necessary to determine. The consideration of the point, if examined, would be embarrassed by the anomalous position of the appellant. He appears at times as a creditor, and at others he assumes the garb of a purchaser in his own right, entirely estranged from the creditors of Punchard. If he be regarded as the representative of his clients, the evidence of Mr. Jack must be rejected. Sug. *(170) Vend, and the cases cited, 345-6. If as an independent purchaser, notice to Bullitt, Shipp & Co., must be disregarded. We perceive also from the opinion of the judge, that material evidence of the fact was not embodied in the statement in the record.
From these circumstances and because a decision would accomplish no useful purpose, we leave the point without decision.
We have seen that other evidence of the existence of the deed of trust, than its due registration, was not inhibited by the spirit and true intention of the 40 th section of the act before referred to.
The same question arises on a provision of our laws which was not discussed in the argument, but upon which we have felt great embarrassment and have not arrived at a satisfactory conclusion. We allude to the third section of the “ act to provide for the foreclosure of mortgages on real and personal estates, approved May 15, 1838,” 3 Laws of Tex. p. 12. That section contains the following provision, viz.:
“All mortgages upon real estate shall, upon the usual proof, be recorded in the county where the land is situated within ninety days from the passage of this act, or from the date of the execution of snch mortgage, and upon personal property in the county where the mortgagor lives. No mortgage shall take lien upon the property mortgaged unless so recorded.”
What is the effect of the provision “that no mortgage shall take lien upon property mortgaged unless so recorded?” Can the instrument have any effect or operation whatever even between the parties without registration? Does not the recording become an essential part of the conveyance, without which it is not transmissive of rights or operative on the property? Hillegas and Wife v. Hartley, 2 Hill Ch. 105. Should these questions be answered affirmatively, the inquiry arises whether construing this provision of the latter statute in the same liberal spirit with which the 40th section of the former was expounded, and having due regard to the legislative intention, a deed of trust when made to secure a debt is not covered by the term mortgage which is employed in the act. The instrument, whether called a deed of trust or a mortgage, has but one, and it is identically the same object, and that is the security of a debt.
The purpose of the law was to prevent an instrument having that effect from being operative until recorded.
The motives of the legislature can only be conjectured. It may have perhaps been supposed that the most effectual mode of protecting the rights of third persons from secret mortgages or incumbrances on property would be, to render them inoperative between the parties *(171) themselves until recorded. It had been already provided by the 40th section of the former act that no deed, conveyance or other lien should take effect as regarded the rights of third parties until duly'proven and presented to the court. Satisfied that under this provision expounded by the settled rule of construction, the rights of third parties were not sufficiently protected from the operation of instruments conveying property on condition, for the more certain assurance of a debt, the third section of the latter statute in which the term mortgage alone is used was adopted, can any possible reason be assigned why an instrument having the same object, but under a different name, should not be affected by this legal provision ? If from motives of public policy a- conveyance called a mortgage, designed to secure a debt, is rendered inoperative unless recorded, would not the legislative design be defeated if a deed of trust having the same extent and object, and no other than that of the mortgage, could be valid and effectual without registration? Could the public interests be counteracted and thwarted by a change of title in the conveyance, the object being the same, whatever may be the colors, shape or designation of the instrument?
We have the decisions of two highly respectable tribunals on similar provisions of the laws of their respective states that the terms, mortgages and deeds of trust, when made to secure debts, are equivalent to each other, at least when considered in reference to laws of registration, and that where by law one of these instruments by name is ordered to be-recorded, and certain legal results spring from the act, the law that its spirit and object may not be defeated shall also be extended to the other instruments, and the same consequences shall flow from the registration of the latter, that are by the letter of the statute attached to the record of the former instrument.
In Hopkins v. Lacoutre, 4 La. 64, an action was brought for the recovery of a slave, to which the plaintiff set up title under a deed of trust executed .in the state of Alabama by one Malone. The slave remained in the possession of Malone, who subsequently brought her to Louisiana and sold her to a person of whom the defendant claimed. The deed of trust contained a condition that in case Malone paid off the debts therein mentioned, the conveyance to the plaintiff should be of no force Or value.
The court say in substance there is evidence that conveyances of that kind were in Alabama valid securities for debts, and that the form was preferred to the ordinary one of mortgage, from the greater facility they afford of selling the property. The only difference the court perceived between them was, that the one was. a conditional sale *(172) to a trustee for the benefit of a creditor, the other a conditional sale to the creditor himself. That the instrument before them had substantially the effect of a mortgage, that is, giving a lien on the property, and nothing more. They add: “This mortgage was not recorded in Louisiana and cannot affect a purchaser in this state who may have acquired a title from Malone, by whom this deed of trust was created.” In this case a deed of trust was included under the term mortgage which was employed in the law.
In the case of Magee v. Carpenter, 4 Ala. 469, the question was whether mortgages were embraced within a statutory provision. The terms of the provision were as follows: “All deeds and, conveyances of personal prop&rty in trust, to secure any debt or debts, shall be recorded, etc., within thirty days, or else the same shall be void against creditors and’subsequent purchasers without notice. The court held that the terms were sufficiently broad to cover mortgages; that no reason could be assigned for the change effected by the action in relation to recording deeds of trust which would not equally apply to mortgages; that the legislature, no doubt, supposed that the terms employed would-embrace all cases in which property was conveyed on a condition, and that such being the evident intention, and it may be added, the practice under this law, such must be its effects.” In this case, the term deed of trust was held to embrace mortgages so far as to subject them to the same registry laws. Similar decisions might perhaps be found on investigation.
These cases cover and decide the precise question now under consideration. The point has, however, not been argued by counsel or been thoroughly examined, and we leave it therefore unsettled.
The other points raised in the cause are either not of controlling importance, or from the view we have taken of the cause, their decision has become unnecessary. The terms plaintiff or appellee and appellant or defendant have, to avoid circumlocution, been employed to designate all the parties opposed in interest, and not as specially descriptive of the individuals prosecuting or defending the action.
It is ordered, adjudged and decreed, that the judgment of the court below"be reversed; and that the cause be remanded for a new trial, that the plaintiff have leave to amend his pleadings should he deem it advisable; that the defendant have leave to file an answer to the original petition and to such amendments as may be made; and should no. answer be filed, that the defendant, in that case, be limited to such defense as he may be entitled to by the rules of law; and the court is directed to require proof of the laws of Mississippi on all questions to which they may be applicable; and should these be not established *(173) on proper proof, the laws prevailing in this republic previous to the commencement of the suit must be regarded as the rule of decision; and the court below is not restrained by these directions, from allowing other parties to be made in the cause, or from doing any other act which is in conformity with law and the practice of courts.