**BANK OF ATLANTA v. FRETZ et al.**

No. 12097.

Court of Civil Appeals of Texas. Galveston.

May 26, 1949.

Rehearing Denied June 9, 1949.

Lawler & Childress, Houston (Virgil Childress, Houston, of counsel), for appellant.

Nat Friedman, Houston, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellant, The Bank of Atlanta, of Atlanta, Georgia,

against appellees, F. L. Fretz, C. E. Sweiven and W. N. Harris, for recovery on a note executed in its favor by appellee W. N. Harris and for foreclosure of a lien secured by a chattel mortgage on a 1948 Studebaker sedan. Appellees answered by general denial. By special plea they alleged that each of them had purchased said automobile in good faith and for a valuable consideration, after having received a proper certificate of title from the owner and without having any knowledge of information that any lien existed against it at the time of the purchase.

In a trial before the court without a jury, judgment was rendered in favor of appellant and against appellee, W. N. Harris, for the debt sued for with interest. It denied foreclosure of appellant's lien against the automobile in controversy, and vested the title thereto in defendant Sweiven, free and clear of the liens and claims asserted by appellant. From this judgment appellant has perfected this appeal. At the request of appellant the trial court prepared and caused to be filed his findings of fact and conclusions of law.

The material facts in the case were established by written stipulations of the parties with documentary evidence attached as exhibits and by an oral stipulation made at the trial.

The trial court found, in substance on what we deem to be ample evidence that on or about December 11, 1947, appellee W. N. Harris had purchased from Cherokee Motors, Inc., in Decatur, Georgia, a new 1948 Studebaker sedan for a total purchase price of $2021.03, the full amount of which he paid in cash and property at the time of the purchase.

That on or about December 12, 1947, in Atlanta, Georgia, for valuable consideration, he executed and delivered to appellant, The Bank of Atlanta, a bill of sale and chattel mortgage covering said automobile to secure his promissory note of that date in the sum of $1224.00.

That the chattel mortgage was duly filed for record in compliance with the laws of the State of Georgia relating thereto and was duly recorded, and that under the laws of the State of Georgia, appellant acquired a good and valid chattel mortgage lien against said automobile.

That thereafter, without the knowledge or consent of appellant, The Bank of Atlanta, Harris transported said motor vehicle to Houston, Texas, and on December 29, 1947, applied to the Tax Collector of Harris County, Texas, for a certificate of title thereto, representing that there were no liens existing against it. On the same day appellee, W. N. Harris, sold said automobile to F. L. Fretz, doing business as F. L. Fretz Motor Company for a total consideration in excess of $2000.00, and executed and delivered to Fretz an assignment of the application for certificate of title to said automobile.

The court found that, at the time of his purchase of said automobile, Fretz had no actual knowledge of the fact that it was then subject to the chattel mortgage lien securing said note for $1224.00 then owing by Harris to The Bank of Atlanta, but that Fretz did know that Harris was, or that he was purported to be a resident of the City of Atlanta, Georgia, and that, prior to the purchase of said automobile, Fretz had made no inquiry of the County Clerk of Fulton County, Georgia, to ascertain whether said automobile was subject to any recorded liens.

That on the date he purchased said automobile, Fretz applied to the Tax Collector of Harris County, Texas, for a certificate of title to said automobile, representing that there were no liens existing against it and that on January 15, 1948, a certificate of title was issued by Texas Highway Department to him in accordance with said application.

That thereafter, Fretz sold said automobile to C. E. Sweiven, representing that there were no liens existing against it and on February 25, 1948, a certificate of title was issued to Sweiven, who now has said automobile in his possession.

The court found that at the time of the purchase of said automobile from Fretz, appellee C. E. Sweiven had no actual knowledge that said automobile was then subject to the chattel mortgage lien securing the note for $1224.00 then owed by Harris to appellant.

That at the time of the purchase of said automobile by Fretz from Harris, and at all times since, the reasonable cash market value of said automobile in Houston, Texas, was, has been and now is, in excess of and not less than $2000.00, and that on February 2, 1948, the Bank of Atlanta first learned that Harris had transported the automobile from the State of Georgia to Texas and had sold it to Fretz who was then in possession of the vehicle.

The court found that defendant Fretz had purchased the automobile from the defendant Harris in good faith and for a valuable consideration and that the sale was consummated in the State of Texas by a bill of sale in proper form and that no lien appeared upon the bill of sale.

It is undisputed in the record, and the court found, that no Certificate of Title Act of any kind is in force in the State of Georgia or was in force at the time of the aforesaid transactions.

This action involves the construction of "The Texas Motor Vehicle Certificate of Title Act, Article 1436—1, Vernon's Annotated Penal Code." We will not lengthen this opinion by embodying in it all of the provisions of the Certificate of Title Act, most of which have been construed by our courts. The provisions of the Act material to this appeal read:

"Section 1. This Act shall be referred to, cited and known as the 'Certificate of Title Act,' and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles and house trailers, and the importation into this State of, and traffic in, stolen motor vehicles and house trailers, and the sale of encumbered motor vehicles and house trailers without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle or house trailer stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. The terms hereinafter set out, as herein defined, shall control in the enforcement and construction of this Act, and it is further provided that wherever the term 'Motor Vehicle' appears in this Act, it shall be construed to include 'House Trailer.'

\* \* \* \* \* \*

"Sec. 7. The term 'First Sale' means the bargain, sale, transfer or delivery within this State with intent to pass an interest therein, other than a lien of a motor vehicle which has not been previously registered or licensed in this State.

"Sec. 8. The term 'Subsequent Sale' means the bargain, sale, transfer, or delivery within this State, with intent to pass an interest therein, other than a lien of a motor vehicle which has been registered or licensed within this State or when it has not been required under law to be registered or licensed in this State.

\* \* \* \* \* \*

"Sec. 10. The term 'Used Car' means a motor vehicle that has been the subject of a first sale whether within this State or elsewhere.

\* \* \* \* \* \*

"Sec. 17. The term 'Importer' means any person, except a manufacturer, who brings any used motor vehicle into this State for the purpose of sale within this State.

\* \* \* \* \* \*

"Sec. 23. The term 'Importer's Certificate' means the certificate on form to be prescribed by the Department for each used motor vehicle brought into this State for the purpose of sale within this State, and such importer's certificate must be accompanied by such evidence of title to the motor vehicle as the Department may, from time to time, require in order to show a good title and the names and addresses of all mortgagees.

\* \* \* \* \* \*

"Sec. 26. The term 'Designated Agent' means each County Tax Collector in this State who may perform his duties under this Act through any regular deputy.

"Sec. 27. Before selling or disposing of any motor vehicle required to be registered or licensed in this State on any highway or public place within this State, except with Dealer's metal or cardboard license number thereto attached as now provided by law, the owner shall make application to the designated agent in the county of his

domicile upon form to be prescribed by the Department for a certificate of title for such motor vehicle.

\* \* \* \* \* \*

"Sec. 29. No such designated agent shall issue a receipt for a certificate of title to any used motor vehicle imported into this State for the purpose of sale within this State without delivery to him by the applicant of an importer's certificate properly assigned by the importer upon form to be prescribed by the Department.

\* \* \* \* \* \*

¹. "Sec. 33. No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed.

"Sec. 34. When all of the forms of transfer on any certificate of title have been used by reason of subsequent sales, such certificate of title may be delivered to any designated agent within this State, and a receipt taken therefor as provided in the case of first sale, and such agent shall forward the same to the Department on the same day received by him, and a new certificate of title shall be issued by the Department.

\* \* \* \* \* \*

"Sec. 38. The Department shall refuse issuance of a certificate of title, or having issued a certificate of title, suspend or revoke the same, upon any of the following grounds:

"(a) That the application contains any false or fraudulent statement, or that the applicant has failed to furnish required information requested by the Department, or that the applicant is not entitled to the issuance of a certificate of title under this Act.

"(b) That the Department has reasonable ground to believe that the vehicle is a stolen or converted vehicle as herein defined, or that the issuance of a certificate of title would constitute a fraud against the rightful owner or a mortgagee.

"(c) That the registration of the vehicle stands suspended or revoked.

"(d) That the required fee has not been paid.

\* \* \* \* \* \*

"Sec. 41. No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of any written instrument by the transferee.

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable against the motor vehicle of any such third parties as the issuance of a certificate of title thereof, unless an application for a new title is made as prescribed in this Act and all first and subsequent liens noted by the Department thereon.

\* \* \* \* \* \*

"Sec. 44. No lien on any motor vehicle to which a receipt or certificate of title has been issued shall be valid as against third parties without actual knowledge thereof, or enforceable against the motor vehicle of any such third parties, unless the notation of said lien shall have been caused to be made on receipts and certificates of title on said motor vehicle, as provided in this Act.

\* \* \* \* \* \*

"Sec. 46. Only liens noted on a receipt or certificate of title shall be valid as against creditors of the mortgagor in so far as concerns the motor vehicle.

\* \* \* \* \* \*

"Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

It is apparent from the court's findings and the foregoing sections of the Certificate of Title Act that the car purchased by appellee Harris was a used car transported

into Texas for sale and that the sale by Harris to Fretz was a subsequent sale of the car; that the County Tax Collector of Harris County (a "designated agent" under the Act) was authorized to issue upon Harris' application a receipt for an application for a certificate to the automobile in question by reason of the fact that Harris had attached thereto a bill of sale from Cherokee Motors, Inc., showing that he was the purchaser of the vehicle; and that Harris and F. L. Fretz, who purchased from him, applied for title certificates on forms prescribed by the Department showing that there were no liens against the vehicle as was disclosed by the affidavit presented to the Tax Collector of Harris County.

It is undisputed in the record that Harris did not execute and deliver to the Tax Collector an importer's certificate, but furnished only a bill of sale showing that he was the owner of the vehicle in question; that he sold said automobile to Fretz for a cash consideration of $2000.00 and that the bill of sale received by him from his purchaser in Georgia did not show a lien against the automobile. The evidence also discloses that appellee Fretz had no actual knowledge that said automobile was then subject to said chattel mortgage lien and that, at the time appellee, C. E. Sweiven, made application for a certificate of title, he had no actual knowledge that it was subject to the chattel mortgage lien in favor of appellant.

Said Article 1436—1 requires that the State Highway Department shall sustain or revoke a certificate of title (a) if the application contains any false or fraudulent statements, or (b) if the applicant has failed to furnish the required information, or (c) if the issuance of a certificate of title would constitute a fraud against a mortgagee.

The record discloses that the certificate of title issued to Fretz upon the application of Harris therefor, contained the false and fraudulent statement that there were no valid liens against the automobile in controversy, that Harris failed to furnish the importer's certificate requested by Section 29 of the Act and that the issuance of the certificate of title constituted a fraud against the bank, it being undisputed that no Certificate of Title Act of any kind was in force in the State of Georgia at the time of any of the transactions involved in this appeal. A chattel mortgage lien, valid under the laws of the State of Georgia, and given by a resident of that State to a Georgia Bank covering an automobile owned by him and then situated in Georgia, cannot be enforced when it has been transported by its owner to Texas and there sold to a resident of Texas, who was a purchaser of said automobile in good faith and for a valuable consideration, upon the false representation by the then owner that it was free of liens.

It is the settled law of this State that "Registration statutes have no extraterritorial force. A mortgage duly registered in another state can constitute no constructive notice to a person in Texas who in good faith purchases the property here paying value therefor", 9 Tex.Jur. Sec. 5, p. 77; Farmers v. Evans, Supreme Court, 111 Tex. 283, 233 S.W. 101.

In 37 Tex.Jur. Sec. 229, pages 503 and 4, it is said, "And if there is nothing to show the existence of the lien, one who pays value in good faith and without notice, takes the goods free from all claims of the original seller. Thus one who buys an automobile from a person who purchased it in another state under a contract which operated there to retain title in the seller until payment should be fully made, may get a clear title to the vehicle, even though the original buyer had paid only a small fraction of the purchase price".

It is undisputed in this record that the bill of sale under which Harris acquired title to said automobile showed that there were no liens against it and that the only evidence of the lien in the record is that appellant had recorded the chattel mortgage in the State of Georgia which under the above authorities did not constitute actual notice of the existence of the lien.

In the case of Best v. Farmers' & Merchants' Bank, Tex.Civ.App., 141 S.W. 334, 336, it was held that, "While foreign

contracts and mortgages, if valid where made, will be by the courts of this state expounded and enforced in this state, as between the original parties thereto, according to the laws of the state where made, we do not think the statutory provisions of one state as to notice flowing from its registration laws can properly be held to have any extraterritorial effect."

Continuing, the court said: "In enforcing the mortgage in controversy in this state, we think, in the absence of actual notice by appellant, the mortgage should be treated as if executed and delivered in this state as of the date the property and its owner and possessor, McNeely, came into the state with it; and, if this be correct, it is clear, from the holdings of our courts in controversies among our own citizens, that the mortgage is absolutely void under the facts in this case as to appellant, whom the record shows was an innocent purchaser for value and without actual notice of the mortgage." (Citing authorities.)

In the case of Willys-Overland Company of California et al. v. Chapman et al., Tex. Civ.App., 206 S.W. 978, 980, the El Paso Court of Civil Appeals, in discussing a case in which the factual situation was almost identical to that in the instant case, said, "Texas rule requiring registration applies alike to all such instruments, though executed and to be performed in California and effective there, to have effect here must be recorded here, for the reason that the instrument executed and to be performed in California has no extraterritorial effect. * * *

"While it is true that as a general rule a contract valid where made is valid everywhere and will be enforced everywhere, there is an exception to the rule as firmly fixed as the rule itself, to the effect that comity is not permitted to operate within a state to the prejudice of its government, in opposition to its settled policy or the interests of its citizens. The Legislature made no exception in favor of foreign conditional contracts or chattel mortgages executed and effective in other states, where the property embraced in such instrument is subsequently brought into this state and

here sold, in enacting articles 5654 and 5655, Vernon's Sayles' Civil Statutes."

In the case of Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S.W. 1072, 1074, the Supreme Court of this state followed the rule announced in the case of Crosby v. Huston, 1 Tex. 203, 204, and in its opinion said, "Plaintiff in error insists that it is a hard rule to deprive him of his reservation of title or lien upon the property without any negligence on his part. Also it is a hard rule to deprive an innocent purchaser for value of the property when he has been at no fault. The difference between them is this: While it works a hardship upon the mortgagee, yet he trusts the property to the possession of the mortgagor, and thereby puts it within the power of the mortgagor to dispose of the property to one who has no notice of his claim. The mortgagee takes the risk incident to such possession, and, while he has done no wrong and may not be negligent in regard to trying to protect his rights in the property, yet he makes it possible for a third person to be defrauded if it should be held that the rights of the third person are subject to his prior claim, of which said purchaser has no knowledge or notice.

"An innocent purchaser for value has no means of protection whatever against a private or secret unregistered reservation of title in chattels, whether made in this state or out of it."

In the case of Farmer v. Evans, 111 Tex. 283, 233 S.W. 101, the Supreme Court of this state announced the rule that the holder of a mortgage duly filed and recorded in the State of Oklahoma cannot enforce same against property covered thereby removed to this state as against an innocent purchaser for value without notice in this state.

In the recent case of Higgins v. Robertson et al., Tex.Civ.App., 210 S.W.2d 250, 253, writ of error refused, no reversible error, under a factual situation similar in all material respects to that in the instant case, the Amarillo Court of Civil Appeals held that the controlling question to be determined was whether the alleged lien which was not shown on the application or certificate of title would prevail over a subse-

quent innocent purchaser for value who had complied with the Certificate of Title Act in all respects. The court held that the issues must be determined by a proper construction of the Certificate of Title Act which repealed and superseded those parts of registration statutes previously enacted so far as they affected the registration of chattel mortgage liens on automobiles and that "no valid lien could be asserted against an automobile unless it is disclosed by a valid certificate of title regularly issued by the Department of Public Safety, even though an asserted lien has been previously filed in the office of the County Clerk". That since the automobile involved in that case was brought from Oklahoma into Texas and showed no lien against the automobile, the designated agent was with full authority to issue a title certificate in Texas showing that there were no liens against the vehicle notwithstanding the fact that the person who had applied for title had no right to make a false statement to the effect that there was no lien against the automobile. The court based its opinion upon the theory that under Sections 43 and 44 of the Act, all lien holders shall take priority according to the time that they appear in the certificate of title and that a lien against a motor vehicle is not valid against an innocent purchaser and is not enforceable against the vehicle held by an innocent purchaser once the lien is shown in the Certificate of Title.

Appellant relies upon the holding in the case of Dublin National Bank v. Chastain, Tex.Civ.App., 167 S.W.2d 795, in support of its contention for reversal of this appeal. The facts in the Dublin National Bank case are, we think, not identical with the facts presented in this appeal in that in that case the owner of the vehicle in which a lien was claimed, fraudulently changed the application of title so that it showed no lien on the automobile and the State Highway Department had issued a title in favor of the vendee without disclosing the lien in favor of the Bank. This transaction took place in Texas.

Appellant also relies for reversal of the case of Commercial Credit Co. v. American Manufacturing Co., Tex.Civ.App., 155 S.W. 2d 834. In that case the car on which the lien was sought to be enforced was purchased and the mortgage registered in Texas. Thereafter, the car was transported to Michigan were appellant procured a certificate of title to the car upon which appellant's encumbrance did not appear. The court held that the lien registered in Texas was enforceable notwithstanding the second title arising out of a fraudulent application for title in the state of Michigan.

It is apparent, we think, that, under above authorities, appellant's lien was not enforceable against the motor vehicle in question or to recover from appellees Fretz or Sweiven for conversion of its security. Finding no reversible error in the record, the judgment of the trial court is affirmed.