## WILSON v. ARMSTRONG. (No. 709.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 4, 1921. Rehearing Denied Jan. 4, 1922.)

1. **Appeal and error** ⧉742(1)—**Duty to review on assignment of fundamental error made on oral argument.**

It is the duty of the appellate court to review the facts of a case on an assignment of fundamental error, made by appellant on oral argument, that the trial court refused to submit to the jury an issue of fact raised by the evidence and disclosed by appellant's brief, though appellant's assignments in his brief and his propositions are too defective for consideration.

2. **Mortgages** ⧉342—**Sales under deeds of trust must be by person properly authorized.**

A sale under a deed of trust by a substitute trustee not appointed by one authorized so to do under the terms of the deed does not divest the title out of the maker of the deed.

3. **Limitation of actions** ⧉39(12)—**Void deed may be attacked after four years.**

Where a sale is made under a trust deed by a substitute trustee not appointed by one authorized so to do under the terms thereof, an attack upon the deed of such trustee is not barred under the four years' statute of limitations.

4. **Mortgages** ⧉342—**That mortgagee asked grantor in deed of trust to appoint substitute trustee held immaterial.**

Because beneficiary in a deed of trust exceeded his authority in asking maker thereof to appoint him a substitute trustee did not take away from him the power given by the deed of trust to make such designation himself, provided he acted within the terms of his grant.

5. **Mortgages** ⧉342 — **Trustee need not tell beneficiary in person that he will not act in order to give beneficiary power to appoint substitute.**

The law does not require that trustee in deed of trust tell the beneficiary in person that he will not act; his refusal to act being enough, if brought to the knowledge of the beneficiary, who may thereupon appoint a substitute as provided under the power given to him in the trust deed.

6. **Mortgages** ⧉342—**Beneficiary held entitled to appoint substitute trustee under deed of trust.**

That trustee informed maker of deed of trust ·that he was going to leave the country and would not have time to execute the trust, coupled with the fact that he did remove himself to a foreign country, authorized the appointment of a substitute trustee by the beneficiary, though the latter had no personal notice from the trustee that he would not act.

7. **Mortgages** ⧉342—**Presumed that trustee will not refuse to act under deed of trust.**

As respects the right to appoint substitute trustee, there is a presumption that a trustee in a deed of trust will not refuse to act, but when called upon will perform the duties imposed on him by the deed.

8. **Mortgages** ⧉369(8)—**Whether grantor in deed of trust had written notice of designation of substitute trustee held for jury.**

In an action involving the validity of a sale by a substitute trustee under a deed of trust, whether grantor in the deed of trust had written notice of the designation of a·substitute trustee, to which he was entitled under the deed of trust, *held* for the jury; such grantor having himself prepared the instrument designating the substitute trustee.

9. **Mortgages** ⧉342—**Grantee of mortgagor held not entitled to notice of designation of substitute trustee.**

Where a deed of trust provides that a substitute trustee may be appointed on the happening of certain contingencies, and that mortgagor shall have written notice thereof, it is not necessary to give notice· of the appointment of a substitute trustee to a third party acquiring the mortgagor's property under execution sale.

### On Rehearing.

10. **Mortgages** ⧉354—**Notices of sale under trust deed may be signed by attorney for substitute trustee.**

Notices of sale of land under a deed of trust need not be signed by the trustee in person, but may be signed for him by his attorney.

11. **Mortgages** ⧉356—**Trustee need not personally post notices of sale.**

Trustee need not himself post notices of sale under a trust deed, but may delegate this duty to another.

12. **Mortgages** ⧉354—**Error in date of notice of sale held immaterial.**

An error in date of notice of sale to be made under a deed of trust is immaterial.

13. **Mortgages** ⧉354—**Substitute trustee may sign notices of sale before appointment.**

A sale of land by a substitute trustee under a deed of trust was not void because he signed the notices of sale before he was formally designated as substitute trustee, providing that he was properly designated at the time he posted them; such posting being a ratification or adoption of his prior act of signing.

Appeal from District Court, Hardin County; J. L. Maury, Judge.

Suit between F. S. Wilson and George W. Armstrong. From a judgment in favor of the latter, the former appeals. Reversed and remanded for new trial.

C. W. Nugent, of Galveston, and A. M. Hill, of Kountze, for appellant.

Orgain & Carroll, of Beaumont, for appellee.

WALKER, J. This was a suit in trespass to try title. F. H. Carpenter was the common source of title to the land in controversy. Appellee claimed under a deed executed

to him by the sheriff of Hardin county of date August 1, 1913—

"by virtue of a certain execution issued out of the district court of Hardin county, Tex., in favor of First National Bank of Sour Lake v. F. H. Carpenter, on a certain judgment rendered on the 20th day of April, 1905, and directed and delivered to me, as sheriff of Hardin county, commanding me, of the goods and chattels, lands, and tenements of the said F. H. Carpenter to make certain moneys in said writ specified."

Appellant claimed under a deed executed and delivered on the 12th day of February, 1907, by J. R. Davenport, substitute trustee, made under the provisions of the deed of trust, containing the following power of sale:

"Now if said note is paid at its maturity, together with all interest and charges of whatsoever kind and character thereon, then this deed of trust shall become null and void and be of no further force and effect, and shall be released at the cost and expense of the said F. H. Carpenter and J. M. Carpenter, but if default should be made in the payment of said note at its maturity, it shall then by the duty of the said C. M. Votaw, or his successor in this trust, or substitute trustee, at the request of the owner and holder of said note, to sell the above-described land for cash at the courthouse door of Hardin county, Tex., on the first Tuesday in any month between the hours of 10 o'clock a. m. and 4 o'clock p. m., after having first given notice of the time, place, and terms of said sale by posting written or printed notices thereof at three public places in Hardin county, Tex., one of which shall be at the door of the courthouse of said county, for at least 20 days prior to the day of sale, and by delivering or mailing to the said F. H. Carpenter a written or printed notice of said sale at least 20 days prior to said sale, and to apply the proceeds of said sale, first, to the costs of making said sale, including a commission of 5 per cent. to said trustee, and to apply the balance to the payment of said note, interest, and attorneys' fees, and, if any balance then remain, the same shall be paid to the said F. H. Carpenter.

"Should the said C. M. Votaw, for any reason, become incapable and unwilling or refuse to perform the duties of this trust, the said F. S. Wilson, or the legal owner and holder of said note, shall have the power to appoint a substitute or substitutes, who shall have all the powers herein conferred on the said Votaw, said appointment to be made in writing, and written notice thereof to be given by mailing same or by personal delivery thereof to the said F. H. Carpenter, and the power of substitution and appointment by the said Wilson, or other holder of said note, to continue so long as may be necessary for the proper execution of his trust."

This deed of trust was executed by F. H. Carpenter and wife to C. W. Votaw, as trustee, on the 22d day of November, 1904, to secure appellant in the payment of a note in the sum of $4,000, executed and delivered to him by F. H. Carpenter and J. M. Carpenter.

On conclusion of the testimony, both parties filed motions for instructed verdicts. Appellant's motion was denied and appellee's granted. On the verdict thus returned, judgment was entered for appellee for the land in controversy. Appellant has duly perfected his appeal from such judgment, assigning errors.

At the threshold of this case, we are met with the objections and exceptions of appellee to appellant's assignments of error and his propositions thereunder. Without discussing the objections in detail, they seem to us to be well taken, as, among other defaults in his briefing, appellant has improperly grouped his assignments of error and propositions, has made defective statements under his propositions, has not made proper references to the record, and has not numbered his assignments according to the rules. Some of these objections might be considered as mere technicalities, but most of them go to the very root of good briefing, and we do not feel authorized to ignore such objections when urged by the injured party. Appellant's counsel, on oral argument, asked permission to withraw his briefs, so that he could meet the objections thus raised, basing his motion on the fact that he has been sick almost continuously since the trial of the case, and has not been able to give his attention to his legal business, saying that he was confined to his bed when the brief was written, and was not able to examine it after the stenographer had it done, and that he had not had time to examine appellee's brief until a few moments before submitting the case on oral argument. Appellee's brief and objections were filed on the 29th of August last, and appellant's counsel conceded that he received a copy of same in due time. Appellee contests appellant's right to have this case rebriefed.

[1] Without discussing the merits of this motion, we deny the same, as under Harlington Land & Water Co. v. Houston Motorcar Co. (Com. App.) 209 S. W. 145, and Southwestern Settlement & Development Co. v. Village Mills Co., 230 S. W. 869, it is our duty to review the facts of this case on the assignment of fundamental error, made by appellant on oral argument, that the court had refused to submit to the jury an issue of fact raised by the evidence and disclosed by appellant's brief.

Under this assignment of fundamental error, and only for the purpose of this opinion, we adopt as a correct analysis of the facts of this case, as reflected by the briefs of the parties, appellee's following proposition:

"The undisputed evidence in this case shows that the appellee has the legal title to the land in this suit, from and under the agreed common source of title, by deeds duly executed and registered, unless the appellant acquired the legal title to the land in dispute under the purported substitute trustee's sale of date February 5, 1907."

We can best discuss this assignment of fundamental error by following appellee's propositions attacking the validity of the sale made by the substitute trustee, as follows:

First Proposition: "The undisputed evidence adduced upon the trial of the cause showing that F. S. Wilson did not appoint F. R. Davenport as substitute trustee in the place of C. M. Votaw, but that the appointment was made by a person other than F. S. Wilson, the purported sale by J. R. Davenport, as substitute trustee, of the land in this suit to F. S. Wilson was wholly void."

[2, 3] Of course, if appellee has correctly construed the facts, this proposition is sound, for a sale by a substitute trustee, not appointed by one authorized so to do under the terms of the deed of trust, is void, and does not divest the title out of the maker of the deed of trust. Boone v. Miller, 86 Tex. 74, 23 S. W. 574. And as such a deed is void, as distinguishable from mere voidable (Bracken v. Bounds, 96 Tex. 200, 71 S. W. 547; Bomar v. West, 87 Tex. 299, 28 S. W. 519; Boone v. Miller, 86 Tex. 74, 23 S. W. 574; Bowman v. Oakley, 212 S. W. 549), appellee was not barred, under the four years' statute of limitation, duly pleaded by appellant, from attacking this deed (Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815).

[4] But we do not agree with appellee in the construction of these facts. There was offered in evidence an instrument in writing, purporting to have been duly executed and acknowledged by appellant, appointing J. R. Davenport substitute trustee. In its terms, this instrument was in compliance with the conditions of the deed of trust. Appellant, the notary public before whom this instrument was executed, Judge C. W. Nugent, and F. H. Carpenter, all swore to the execution of this instrument. If it be conceded that these witnesses were so interested in this case as to carry to the jury the truthfulness of their testimony, at least, such testimony was sufficient to raise the issue of the due execution of such appointment. If this be conceded, then appellee urges the further proposition:

"The undisputed evidence in this case showing that the substitute trustee, J. R. Davenport, was appointed by F. H. Carpenter, and that the judgment drawn purporting to be a designation of J. R. Davenport as substitute trustee, if signed by F. S. Wilson, was signed by him simply because he was requested by F. H. Carpenter and C. W. Nugent to sign the same, after J. R. Davenport had been appointed substitute trustee by F. H. Carpenter, the appointment of Davenport was never made as was contemplated by the deed of trust, and the act of Wilson, if in fact he signed the same, did not constitute an appointment as contemplated by the terms of the deed of trust, and the same made by Davenport thereunder as substitute trustee was wholly void," citing

Michael v. Crawford et al., 108 Tex. 354, 193 S. W. 1070.

That case does not sustain his proposition. It held that, where an attorney in fact for a beneficiary, acting under the authority given him by his appointment as such attorney, designated a substitute trustee, and after sale by the substitute trustee the beneficiary, by an instrument in writing, ratified such appointment, such sale was void. All that case holds is well stated in the fifth syllabus, as follows:

"The right to appoint a substitute trustee under a power of sale is in the nature of a personal trust, not to be delegated, and can be exercised only by a person on whom it has been conferred in accordance with the terms of the power"

—and that a sale made by a substitute trustee not appointed by one authorized so to do by the terms of the deed of trust is void. It is true that the witnesses testified that appellant told F. H. Carpenter to appoint a substitute trustee, and that Carpenter selected F. R. Davenport. But the evidence raises, as a question of fact, the issue that appellant made the written appointment of Davenport as substitute trustee before he did anything towards the execution of the trust which Carpenter had asked him to assume. According to the testimony of the witnesses, appellant executed this written designation of substitute trustee as his own act, without duress from any source. Because he had exceeded his authority in asking Carpenter to appoint him a substitute trustee did not take away from him the power, given him by the deed of trust, to make such designation himself, provided he acted within the terms of his grant.

Appellee construes appellant's answers to the following ex parte interrogatories propounded to appellant:

"Interrogatory No. 22 reads: Are you acquainted with J. R. Davenport, and did you ever have any dealings of any kind with him? A. I am not acquainted with J. R. Davenport, never had any dealings with him that I can remember.

"Interrogatory No. 23 reads: It is a fact is it not that you never did appoint him as trustee, or substitute trustee, to sell any land or attend to any business for you? A. It is a fact"

—as an admission by him "that he did not appoint J. R. Davenport substitute trustee." As we have already shown, there was offered in evidence a written designation of Davenport as substitute trustee, which was sustained by the testimony of four witnesses. It also appears, from the examination of appellant on the trial of this case, that he was confused as to the meaning of interrogatories of the character of those just above given, and that appellant intended to say, "It is a fact" that he had appointed Davenport substitute trustee. No explanation was

asked him of his answer to interrogatory No. 23, but he did explain his answers to other interrogatories of similar import, and from his general explanation a jury could have concluded that that was his construction of the interrogatories under discussion.

Second Proposition: "The undisputed evidence in this case shows that F. S. Wilson never made a request upon C. M. Votaw, the original trustee, to execute the trust instrument as was contemplated by the terms of said instrument."

Appellee would sustain this proposition by the following statement from the record:

"F. H. Carpenter, witness for the defendant, on direct examination testified:

" 'When I failed to put up additional security on this $4,000 note to Mr. Wilson I know what Mr. Wilson did, looking to a collection of that note, and whether or not he employed counsel, looking to the collection of that note and the enforcement of his lien. At my own suggestion I told him to foreclose the deed of trust and to employ him an attorney. I was not in a position at that time to have rendered him any material assistance. * * *

" 'Q. Mr. Carpenter, who, if anybody, within your knowledge, acting for F. S. Wilson— you said you were rendering him such assistance as you could—saw C. M. Votaw in the matter of his enforcing that trust in that deed of trust as trustee? A. I did. That was before the appointment of J. R. Davenport as substitute trustee. Mr. C. M. Votaw was then making his home in Beaumont, and he was engaged in business in Beaumont. In 1907, at the time this foreclosure was made by the trustee, Mr. Votaw was in the island of Santo Domingo and made his business headquarters there. He occasionally visited this country, but on the question of substitute trustee, or asking Mr. Votaw to act as trustee, he was just ready to leave for Santo Domingo. Now as to whether he stated he would stay here and execute that trust, why, he declined to do it; that he had to go to Santo Domingo at once and that he could not do it and would not have time to do it, and suggested that we have Mr. Davenport in his office appointed as the substitute trustee. I reported to Mr. Wilson and I reported that to you, C. W. Nugent, as his attorney. * * * My approaching him for that purpose was I had authority of F. S. Wilson and was acting for him, and I reported that to you, C. W. Nugent, as his attorney. He agreed to that. After the appointment of J. R. Davenport as substitute trustee I have knowledge of the notices that were gotten out by you giving notice of the sale of these lands in controversy here by Mr. Davenport as substitute trustee. * * * ' "

[5, 6] In discussing the preceding proposition, we concluded that the appointment of a substitute trustee, except on the conditions of the deed of trust, is without authority, and that a sale by him is void. Neither the original trustee nor the substitute trustee can sell except on the conditions of the deed of trust. But, relating to the proposition now under discussion, we do not understand

that the law requires of the trustee that he tell the beneficiary in person that he will not act. It is enough for him to refuse to act, and for this refusal to be brought to the knowledge of the beneficiary. When he refuses to act—that being a condition of the deed of trust—the beneficiary is empowered to appoint a substitute trustee. The deed of trust does not require the trustee to give personal notice to the beneficiary of such refusal, and for us to make such personal notice a condition authorizing the appointment of a substitute trustee would be to add to the burdens imposed by the deed of trust on its due execution. But, apart from this conclusion, this record shows that C. W. Votaw, the trustee, had removed himself from this country and was making his principal place of business in Santo Domingo at the time the substitute trustee was appointed. The language of the witness Carpenter was:

"In 1907, at the time this foreclosure was made by the trustee, Mr. Votaw was in the island of Santo Domingo and made his business headquarters there."

We believe the fact that he had removed himself to a foreign country, coupled with the statement made by him to Carpenter, authorized the appointment of a substitute trustee. Ward v. Forrester, 87 S. W. 751.

[7] As an abstract proposition of law, we agree with appellee that it is a presumption that a trustee in a deed of trust will not refuse to act, but when called upon will perform the duties imposed upon him by the deed of trust. This presumption does not make void this sale by the substitute trustee, for it clearly appears, as an issue of fact, that Votaw, the original trustee, had declined and refused to execute this trust.

Third Proposition: "The evidence being undisputed that the purported designation of J. R. Davenport as substitute trustee, if signed, was signed and acknowledged on the same day, and the evidence showing by the certificate of the notary that said instrument was acknowledged on the 14th day of January, and it appearing by the undisputed evidence that the notice of sale by the substitute trustee was executed on January 11, 1907, and the date that the sale was advertised was on January 11, 1907, which also appears from the deed executed by J. R. Davenport on the 12th day of February, 1907, therefore, at the time said notice was executed and posted said J. R. Davenport was without authority to act as substitute trustee, and the purported appointment of him as substitute trustee of January 14, 1907, could not give him authority to make a sale of the lands in question under notices that he had published at a time when he was not substitute trustee."

The notices of sale, made and posted by the substitute trustee, were dated the 11th day of January, 1907. The written designation of Davenport was dated the 14th day of January, 1907. If these were the correct

dates of these instruments, the sale by the substitute trustee would be void, because at the time of the execution of the notices of sale, as shown by their dates, the substitute trustee had no authority to act. But the dates of these instruments do not import absolute verity. Four witnesses testified that these notices of sale were executed after the execution of the written designation of Davenport as substitute trustee. This evidence was sufficient to carry to the jury, as an issue of fact for their determination, the proper date of the execution of the notices of sale, and of the facts assumed by appellee as a basis for their proposition.

Fourth Proposition: "There not being a strict compliance with the terms of the original deed of trust, in that said deed of trust required that, if it became necessary, for any of the reasons mentioned in said deed of trust, to appoint a substitute trustee, written notice of such appointment be given to F. H. Carpenter, either by mailing or by personal delivery, and it being undisputed that such written notice was not given, the purported sale by the substitute trustee, J. R. Davenport, to F. S. Wilson was void."

In considering this proposition, we are not unmindful of the language used by Judge Phillips in Micheal v. Crawford, supra. He said:

"The power of sale in a deed of trust is an important power. It is a method provided for the transferring of one man's property to another. The maker of the instrument has the right to impose upon its exercise such conditions as he deems necessary, and such limitations as he does impose must be strictly followed. It is a power which admits of no substitution and of no equivalent. Crosby v. Huston, 1 Texas, 203; Boone v. Miller, 86 Texas, 74, 23 S. W. 574; Perry on Trusts (3 Ed.) sec. 602."

[8] But, within the intent and meaning of the words used in this deed of trust, we believe that the facts assumed in this proposition should have gone to the jury. Upon appellant's testimony, these facts appear:

The $4,000 note which was secured by the deed of trust was executed on valuable consideration. This note contained the following condition:

"This note is secured by pledge of the securities mentioned on the reverse hereof, with the right to call for additional security should the same decline, and, on failure to respond, this obligation shall be deemed to be due and payable on demand."

At the time of the execution of the deed of trust, this land was well worth the amount of the note. Afterwards it declined in value. F. H. Carpenter became heavily involved, and executions were being levied on his property. Wilson became uneasy about the payment of his note, and demanded additional security. Carpenter was not in position to give any additional security, and on his advice and at his suggestion Wilson matured the note under the clause above mentioned. Wilson was a brother-in-law of Carpenter, and of very little business experience. He asked Carpenter to see Votaw, and when Votaw refused to act asked him to appoint a substitute trustee. Carpenter requested Davenport to act as such substitute trustee. Before Davenport took any action towards discharging this trust, Wilson himself, by the instrument of writing above discussed, made a written designation and appointment of Davenport as substitute trustee. Judge Nugent was selected as attorney for Wilson by Carpenter himself. Carpenter was present when this written appointment was executed, saw its execution, and knew its contents. In fact, this record raises the issue that Wilson executed this written designation on the advice of Carpenter himself. As Carpenter had this instrument prepared, and advised its execution, knew its contents, and was present when it was executed, it seems to us that the condition of sale that Carpenter be "given written notice of such appointment" has been literally complied with.

Fifth Proposition: "Where a deed of trust provides that a substitute trustee may be appointed on the happening of certain contingencies but the appointment shall be in writing and that a copy of such appointment shall be given the mortgagor, and thereafter the mortgagor's interest is acquired in an execution sale by a third party, which fact is known to the holder of the note that the deed of trust is given to secure, notice of the appointment of a substitute trustee provided for in the original instrument must be given to the third party acquiring the mortgagor's right."

[9] This proposition does not announce a correct principle of law. There is nothing in this deed of trust requiring that notice of the appointment of a substitute trustee be given to one holding the legal title of the land in controversy under F. H. Carpenter. Appellant was not required to go beyond the terms of his power to have the land sold.

All the facts discussed by us in this opinion are taken from the briefs. As we have already said, we believe it is our duty, on the assignment of fundamental error, to review these facts. Except on the propositions herein discussed, the sale by the substitute trustee seems to be valid and regular in its execution. It seems to us that the facts discussed clearly show that the court erred in assuming, as a matter of law, the invalidity of the sale made by the substitute trustee. Such issue should have gone to the jury as an issue of fact.

Hence on the assignment of fundamental error, and without regard to assignments of error and propositions submitted by appellant in his brief, we reverse and remand this cause for a new trial.

## On Rehearing.

[10-13] The deed of trust contained the following stipulation as to posting the no-
·tices of sale:

"It shall then be the duty of the ·said then * * * substitute trustee, * * * after having first given notice of the time, place, and terms of said sale by posting written or printed notices thereof. * * *"

(We refer to the quotation made from the deed of trust in our original opinion.) Under this clause of the deed of trust the actual time of signing of the notice of sale by the substitute trustee was an immaterial issue. He was only required to post the notices of sale. Of course, this duty also involved the additional ' duty of preparing the notices and signing them. But, as to this, it has been held that the notices of sale need not be signed by the trustee in person, but can be signed for him by his attorney (Munson v. Ensor, 94 Mo. 504, 7 S. W. 108); that the trustee does not have to post the notices himself, but may delegate this duty to another (Roe v. Davis, 142 S. W. 950; Walker v. Taylor, 142 S. W. 31);' and that an error in the date of the notice of sale is immaterial (Weyburn v. Watkins, 90 Miss. 728, 44 South. 145). The signing and posting of notices of sale are ministerial acts, and do not involve the exercise. of discretion. Whether Davenport signed the notices of sale before he was formally designated as substitute trustee or after his designation, at the time when he posted them, as required by the deed of trust, and by his act in posting them, he ratified and affirmed his prior act of signing the notices, and recognized it as his present act, as of date of posting, as fully as if he had erased his signature from the notices and re-signed them. To hold otherwise would require a substitute trustee, who had signed notices of sale prior to his formal designation as such substitute trustee, to do the foolish thing of erasing his name from the notices of ·sale and re-signing them. We withdraw what we said in discussing this issue in our original opinion, though no exception has been taken thereto. What we there said is subject to the construction of holding void a substitute trustee's sale on the ground that he had signed the notices of sale before he had been designated substitute trustee. Such a holding, in our judgment, would not be the law.

We also withdraw out statement that four witnesses testified that the notices of· sale were executed after the execution of the written designation of Davenport as substitute trustee. No witness testified to this fact directly, but. such issue was raised by the testimony. Judge C. W. Nugent testified:

"In my presence, and in the presence of Mr. Carpenter and justice of the peace, he signed that paper [referring to the written designa-
tion of Davenport as substitute trustee], and acknowledged it in his individual capacity— signed it in his individual capacity. A few days after that, or about right close to that time, I met Mr. J. R. Davenport and F. H. Carpenter in Sour Lake. I don't recall now that Mr. Wilson was present on that occasion, perhaps he was not—I directed Mr. Davenport that he should post three notices of this proposed sale —drafts of which I had already made—a number of them—and he should have the notice published in a newspaper then published in Hardin county."

Mr. F. H. Carpenter testified:

"After the appointment of J. R. Davenport as substitute trustee, I had knowledge of the notices that were gotten out by you giving notice of the sale of these lands in controversy here by Mr. Davenport as substitute trustee. The notices were posted. I received a letter from you [C. W. Nugent] some time before, say.- ing that three notices must be posted in three different parts of the county, one of which must be at the county site and two at other places. I saw you [C. W. Nugent] in Sour Lake in person and talked these matters over with you and Mr. Davenport before these notices were posted up. I know of my own personal knowledge that Mr. Davenport in person posted notice of this sale that was had in February, 1907. Now as to what request or instructions, if any, you gave me at Sour Lake at that time with reference to the posting of these notices, and as to who should post them, well, you asked me to go with Mr. Davenport and see that they were posted in accordance with your former instructions. I did go with him. I will not tell this jury where these notices were posted. I don't remember just exactly where they were all posted, but one of them was posted at Sour Lake, and the other I think we posted close to the road in the town of Saratoga, but I will not be just positive. It was either right in the town or right in the edge of town, as I remember it now. That was an oil town at the time and a public place. One of the notices was posted at the courthouse door at Kountze, the county site of this. county. * * * I am familiar·with the handwriting of J. R. Davenport, and this signature here to this notice of sale which you have handed me is the signature of J. R. Davenport. This notice of sale is in substance a copy of that notice, as I remember the character of the notice. * * *

"Q. You remember where these notices of sale were signed, Mr. Carpenter, what part of· Sour Lake, and where? At any rate, did you see them signed, did you see Mr. Davenport sign these notices? A. I don't know whether I did or not; but I know this is his· signature that he signed, and I saw him post them."

Appellee also assigns error against certain findings in the original opinion on the ground that we found such issues as facts when we should have said that the testimony was. sufficient to raise such issues of fact for the jury. All we intended to say was that. such issues were raised as issues of fact for the jury.

The motion for rehearing, after being fully considered, is in all things overruled.