

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SAMUEL AND SHAWN CALVILLO, ARIELLE NOEL CALVILLO, SAMUEL ELLIOTT CALVILLO, ELLIOTT ARCELIS CALVILLO AND MATTHEW LARS CALVILLO, | § § § § | No. 08-13-00353-CV<br><br>Appeal from the<br><br>County Court at Law Number Three |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2012-DCV01834) |
| CARRINGTON MORTGAGE SERVICES AND WELLS FARGO BANK, N.A., AS TRUSTEE FOR CARRINGTON MORTGAGE LOAN TRUST, SERIES 2006-NC5 ASSET-BACKED PASS-THROUGH CERTIFICATES, | § § § § | |
| Appellees. | | |

# **O P I N I O N**

After the foreclosure and subsequent sale of their home, Samuel and Shawn Calvillo (along with Arielle, Samuel, Elliott, and Matthew Calvillo) sued the company servicing their mortgage loan, Carrington Mortgage Services, and the current holder of their mortgage note, Wells Fargo Bank, N.A., as Trustee for Carrington Mortgage Loan Trust. The Calvillos alleged the foreclosure sale was rendered improper by the defendants' fraudulent and deceptive practices and their violations of the Texas Property Code and conspiracy. In addition to damages and attorney's fees, Appellants sought a declaratory judgment that the foreclosure and subsequent sale be set aside and their title restored. The case was tried to a jury. After the Cavillos had presented

their evidence, both sides rested. The trial court then entered a directed verdict in favor of defendants. We affirm.

## BACKGROUND

On October 18, 2006, Samuel and Shawn Calvillo purchased a residence in El Paso, Texas, and executed a Texas Home Equity Adjustable Rate Note with Mortgages First Real Estate Services, Ltd. (MFRES), the originating lender. That same day, the Calvillos executed a first lien on the property in favor of MFRES through a Texas Home Equity Security Instrument ("deed of trust").

MFRES subsequently assigned the Calvillos' note to New Century Mortgage Corporation. In June 2007, New Century Mortgage Corporation appointed Carrington Mortgage Services, L.L.C. to replace it as the loan servicer. In November 2008, New Century Mortgage Company assigned the Calvillos' note to Wells Fargo Bank, N.A., as Trustee for Carrington Loan Trust.

These indorsements and assignments were executed on an allonge[1] that was affixed to the Calvillos' note. To provide constructive notice of these assignments, both assignees filed instruments in the real property records of El Paso County: MFRES filed a Texas Home Equity Assignment of Security Interest, and New Century Mortgage filed a Transfer of Lien.

As the current mortgagee and trustee, Wells Fargo Bank was not involved in the servicing of either the note or the deed of trust; nor was it involved in the foreclosure on the property. Rather, Carrington Mortgage Services continued to service the note and deed of trust.

After the Calvillos failed to make payments as required by the note, Carrington Mortgage Services allowed them to twice modify the loan agreement, in January 2009 and December 2010.

---

[1] An allonge is a slip of paper attached to a negotiable instrument for the purpose of receiving further indorsements. *See* a*llonge*, Black's Law Dictionary (10th ed. 2014).

2

Despite this, the Calvillos did not make the agreed payments. On May 6, 2011, Carrington Mortgage Services sent notices by certified mail to Samuel and Shawn Calvillo that the note was in default and of its intent to foreclose on the property. The notices went unclaimed. On July 27, 2011, Carrington Mortgage Services (through its attorneys) sent notices of acceleration on the note by certified mail to the Calvillos.

On December 9, 2011, a law firm retained by Carrington Mortgage Services issued a letter to the Calvillos by certified mail providing notice of acceleration and notice of a non-judicial foreclosure sale of the property. The notices stated that the maturity date on the note had been accelerated, demanded payment for all sums due under the terms of the note and deed of trust by 5 p.m. on the Friday immediately preceding the foreclosure sale, and explained that if timely payment was not received, the property would be sold to the highest bidder at a foreclosure sale on January 3, 2012, between 10 a.m. and 1 p.m. by the Trustee or one of the appointed Substitute Trustees identified in the notice. Included with each letter was a separate notice of non-judicial foreclosure sale, which was effective December 12, 2011 and identified eight substitute trustees in its signature block. The notice of non-judicial foreclosure sale was filed with the El Paso County Clerk on December 12 or 13, 2011. The notices mailed to the Calvillos were returned unclaimed.

On December 21, 2011, Wells Fargo Bank, N.A., by and through Carrington Mortgage Services, executed a Removal of Trustee and Appointment of Substitute Trustee, effective December 12, 2011. This instrument authorized the same eight persons who had been identified in the December 9, 2011 notices of acceleration and foreclosure sale to act as substitute trustees, pursuant to the deed of trust, and to sell the property. At the January 3, 2012, foreclosure sale, Wells Fargo Bank, as Trustee for Carrington Mortgage Loan Trust, paid $204,000 for the property,

3

as evidenced by Substitute Trustee's Deed executed on March 20, 2012, and expressly made effective on January 3, 2012. At the time of trial, Appellants remained in the property under an abated eviction proceeding pending the outcome of the underlying suit.

## DISCUSSION

### *Deficiencies in the Briefs*

The Cavillos raise three issues on appeal.[2] Before addressing those issues, however, we must address certain deficiencies in the Cavillos' briefs. Although this case proceeded to trial, the Cavillos' briefs fail to cite to any portion of the nine-volume reporter's record, which contains the testimony and evidence admitted during the trial. Instead, the Cavillos cite only to the three-volume clerk's record, in which no trial evidence may be found. Rule 38.1 requires that the statement of facts and argument in a brief be supported by citations to the record. TEX. R. APP. P. 38.1(g), (i). Although the Cavillos' briefs may technically comply with Rule 38.1 by citing to the clerk's record, they do not assist the Court in deciding the issues presented, since the clerk's record has little relevance to this case, which was determined at trial on directed verdict. We are mindful, however, that we are to construe the briefing rules liberally. TEX. R. APP. P. 38.9.

By a narrow margin then, we conclude we are able to decide this appeal on the briefing before us.[3] Concerning the record cites, however, we note that, as an appellate court, we have no duty – or even a right – to perform an independent review of the record to determine whether error

---

[2] In their reply brief, the Cavillos attempt to present a fourth issue. Rule 38.3 restricts a reply brief to addressing matters raised in the appellee's brief. TEX. R. APP. P. 38.3. A reply brief may not be utilized as a vehicle to present a new issue to the court. *See Fox v. City of El Paso*, 292 S.W.3d 247, 249 (Tex.App. –El Paso 2009, pet. denied). Accordingly, we will not consider any new issues raised in the reply brief. We will, however, consider any arguments in the reply brief made in response to matters raised in appellees' brief.

[3] We also note that, although the trial court granted a directed verdict, the Cavillos' prayers for relief in both briefs request that "the summary judgment be vacated[.]" However, we have been able to determine, upon a thorough and liberal review of the Cavillos' opening brief, that it presents arguments that can be construed as seeking reversal of the trial court's directed verdict, rather than the vacating of a summary judgment as requested in the prayer.

exists, because to do so would constitute an abandonment of our role as a neutral adjudicator and a transition to party advocate. *Valadez v. Avitia*, 238 S.W.3d 843, 844-45 (Tex.App. – El Paso 2007, no pet.); *see also Sisters of Charity of Incarnate Word, Houston, Tex. v. Gobert*, 992 S.W.2d 25, 31 (Tex.App. – Houston [1st Dist.] 1997, no pet.) (addressing inadequate briefing and observing that party asserting error on appeal bears the burden of showing that the record supports the contention raised and of specifying the place in the record where matters upon which it relies or of which it complains are shown). Keeping this in mind, we proceed to address the issues raised.

### *Standard of Review*

A directed verdict may be properly granted in one of three instances. *Salazar v. Sanders*, 440 S.W.3d 863, 869 (Tex.App. – El Paso 2013, pet. denied), *cert. denied*, 135 S.Ct. 1433 (2015). First, a directed verdict is proper where there is "no evidence" raised to support a material issue in the suit. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). Second, the trial court may direct a verdict where evidence conclusively establishes a fact and "reasonable minds could reach but one conclusion under the available evidence." *Vance v. My Apartment Steak House*, 677 S.W.2d 480, 483 (Tex. 1984). Third, a directed verdict is an appropriate procedural mechanism where a pleading defect renders judgment for the nonmovant legally impossible. *See Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 661 (Tex.App. – El Paso 1992, writ denied).

In reviewing a directed verdict, we examine the evidence in the light most favorable to the person suffering an adverse judgment. *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex. 1996); *Salazar*, 440 S.W.3d at 870. The appellate court must review the entire record to determine whether there is more than a scintilla of evidence that a fact question existed. *Salazar*, 440 S.W.3d at 870; *Field v.*

5

*AIM Mgmt. Group, Inc.,* 845 S.W.2d 469, 472 (Tex.App. – Houston [14th Dist.] 1993, no pet.). To meet the "more than a scintilla" threshold, evidence must demonstrate more than surmise or suspicion that a fact exists. *Service Corp. Int'l v. Guerra,* 348 S.W.3d 221, 228 (Tex. 2011); *Salazar*, 440 S.W.3d at 870.

### *Notice*

In Issue One, the Cavillos assert the trial court erred when it "ignor[ed] the bank's failure to give the 21-day notice required by the mortgage security instrument and the Texas Property Code." The Texas Property Code provides that notice of a foreclosure sale must be given at least 21 days before the date of sale by, among other things, "serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt."[4]   TEX. PROP. CODE ANN. § 51.002(b)(West 2014).

The Cavillos do not dispute that the notice of foreclosure was dated December 9, 2011. Rather, they contend the substitute trustee's notice of foreclosure, although dated December 9, 2011, was untimely because the document appointing the substitute trustee was not executed until December 21, 2011, only twelve days before the foreclosure sale. We note, however, the document appointing the substitute trustee, although executed on December 21, was "[t]o be effective as of December 12, 2011."

We observe that the twenty-first day following December 9, 2011, the date on which the notice of the foreclosure sale was provided to the Calvillos, was Friday, December 30, 2011. *See* TEX. PROP. CODE ANN. § 51.002(g) (West 2014) (concerning the computation of time of the 21-day notice). Likewise, the twenty-first day following December 12, 2011, was Monday, January 2, 2012. *Id.* The foreclosure sale occurred on Tuesday, January 3, 2012.

---

[4] The mortgage security instrument also required 21 days' notice of sale.

Consequently, if the notice of foreclosure was effective as of December 12, 2011, notice was timely.

Although, as a general rule, a substitute trustee has no power to act prior to his appointment, it has long been settled in Texas that when a substitute trustee signs and posts a notice prior to the substitute trustee's appointment, the subsequent post-appointment acts of the substitute trustee have the effect of ratifying and affirming his pre-appointment acts. *Chandler v. Guar. Mortgage Co.*, 89 S.W.2d 250, 254 (Tex.Civ.App. – San Antonio 1935, no writ) (addressing ratification of substitute trustee's pre-appointment acts). In *Chandler*, a notice of sale was posted by the substitute trustee ten days before the substitute was appointed. *Id.* The court of civil appeals declared that under those facts, "the presumption will be indulged that the posting of notice was made by the substitute trustee after his appointment . . . [and] even if his appointment was made after posting the notices, his subsequent acts under the appointment had the effect of ratifying and affirming his prior acts as substitute trustee." *Id.*

The *Chandler* court relied on the analysis and holding in *Wilson v. Armstrong*, 236 S.W. 755, 760 (Tex.Civ.App. – Beaumont 1921, no writ), in which a substitute trustee signed and posted notices prior to his appointment. The *Wilson* court stated that the acts of signing and posting notices of sale are ministerial and explained: "Whether [the trustee] signed the notices of sale before he was formally designated as substitute trustee or after his designation, at the time when he posted them . . . and by his act in posting them, he ratified and affirmed his prior act of signing the notices, and recognized it as his present act, as of date of posting, as fully as if he had . . . re-signed them." *Id.*; *see also Bernal-Bell v. Saxon Mortgage Servs., Inc.*, No. 04-10-00099-CV, 2010 WL 3250115, at *3 (Tex.App. – San Antonio Aug. 18, 2010, no pet.) (mem. op., not designated for

7

publication) (actions before substitute trustee's appointment were ratified by her appointment, and there was no irregularity in the sale); *Benser v. G.E. Capital Mortgage Servs., Inc.*, No. 05-93-00995-CV, 1994 WL 156245, at *4 (Tex.App. – Dallas Apr. 25, 1994, writ denied) (not designated for publication) ("when a party appoints the substitute trustee after the substitute trustee posted the notices of foreclosure, his later acts under the appointment ratify and affirm his prior acts as substitute trustee"); *Koger v. CitiMortgage, Inc.*, No. A-14-CA-106-SS, 2014 WL 897339, at *2 (W.D. Tex. Mar. 5, 2014), *aff'd*, 583 F.Appx. 351 (5th Cir. 2014) ("under Texas law trustees may ratify and affirm actions taken prior to appointment").

Here, the instrument appointing the substitute trustees, which was executed on December 21, 2011, was designated "[t]o be effective as of December 12, 2011." Consequently, under *Chandler* and *Wilson*, the substitute trustee's actions in issuing the notices of foreclosure were ratified by the subsequent appointment, and thus the notices of foreclosure sale were timely. Accordingly, the trial court did not err in granting a directed verdict. Issue One is overruled.

### *Authenticity and Validity of Title Documents*

In their second issue, the Cavillos complain that the trial court erred when it "ignor[ed]" their challenge to the authenticity and validity of the documents on which the defendants relied to establish title. The Cavillos note that they offered into evidence six versions of the note. They assert that five of those versions vary from the note offered by defendants as Exhibit 1 because they lack the allonge with the endorsement to Wells Fargo Bank.[5] They contend that therefore "a fact issue exists as to whether Defendants' trial exhibit 1 is a forgery," preventing directed verdict.

---

[5] Our review of the record shows that while the Cavillos put six versions of the note into evidence, two of those versions included the allonge, not one as they claim.

8

At trial, the note with the allonge bearing the assignments to New Century Mortgage Corporation and to Wells Fargo Bank, as Trustee for Carrington Mortgage Loan Trust, were marked and entered into evidence as Defendants' Exhibit 1. The Cavillos objected to one of defendants' exhibits as hearsay because it did not fall under the business-record exception to hearsay provided by Rule of Evidence 803(6). But when asked by the trial court if the Cavillos "have any problem" with defendants' exhibits "1 through 20," counsel for the Cavillos replied, "No, Your Honor." Accordingly, Defendants' Exhibit 1, the note with the attached allonge, was admitted into evidence without objection.

Rule 803(6) deems business records to be admissible as an exception to the hearsay rule if they are authenticated as business records, and if "the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." TEX. R. EVID. 803(6)(E). Thus, the time for the Cavillos to raise any questions as to the authenticity or trustworthiness of the note with the attached allonge was when Defendants' Exhibit 1 was offered into evidence. By failing to object, the Cavillos have waived any complaint on appeal concerning the authenticity or trustworthiness of the note with the attached allonge. TEX. R. APP. P. 33.1(a)(1)(A) (to preserve error for consideration on appeal, a complaint must be made to the trial court by a timely request, objection, or motion that states the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context).

Even if the Cavillos have not waived error, they had the burden of proof as to forgery. *See Tomlinson v. Estate of Theis*, No. 03-07-00123-CV, 2008 WL 160202, at *6 (Tex.App. – Austin Jan. 18, 2008, no pet.) (mem. op., not designated for publication) (proponent of assertion that

9

document is forged has burden of proof on that issue). The mere fact that the Cavillos themselves put into evidence versions of the note that did not have the allonge attached does not raise a triable fact issue that Defendants' Exhibit 1 was forged. We conclude that the non-allonge versions of the note raise no more than a surmise or suspicion of forgery, and that without more, the Cavillos failed to produce more than a scintilla of evidence that a fact question of forgery existed. And, in this appeal, the Cavillos have failed to cite in their briefs to the reporter's record to show the Court where there is other evidence, if any, to raise a fact issue as to forgery. Under these circumstances, we decline to conduct an independent review of the voluminous record for such evidence or to make the Cavillos' arguments for them. *See Chappell v. Allen*, 414 S.W.3d 316, 321 (Tex.App. – El Paso 2013, no pet.) (in considering improperly briefed appellate challenge to summary judgment, which failed to cite to testimony and evidence in summary judgment record, court declined to conduct independent review of the voluminous record or to make Appellant's arguments, addressing only that evidence to which appellate court had been properly directed).

### *Public Policy*

The Cavillos also assert in Issue Two that the trial court's ruling is against public policy. At trial, the Cavillos relied on a consent order issued through the United States Department of the Treasury's Comptroller of the Currency, in which the Comptroller identified certain deficiencies and unsafe or unsound practices in Wells Fargo Bank's residential mortgage servicing, and its initiation and handling of foreclosure procedures. On appeal, the Cavillos contend that allowing Wells Fargo Bank to enforce any copy of the note is against public policy because it "has engaged in the very practices deemed 'unsafe and unsound' by the Comptroller of the Currency." The Cavillos argue the trial court erroneously admitted into evidence the "potentially forged" note,

10

conflicting affidavits by Tom Croft regarding ownership, and letters from Carrington Mortgage Services and its attorney regarding the principal and interest due, and gave them full weight. To permit the trial court's directed verdict to stand, the Cavillos argue, would constitute ratification of Wells Fargo's practices to circumvent the intent of the consent order.

As we have noted, the Cavillos have waived any complaint regarding the authenticity of the note by failing to object to its admission. We make two additional observations that are fatal to any public policy complaints based on the consent order.

First, as even the Cavillos recognize, the consent order addresses the practices of Wells Fargo Bank, *as a residential mortgage servicer*. In this case, Wells Fargo Bank was not the residential mortgage servicer, but rather served as trustee for Carrington Mortgage Loan Trust. Carrington Mortgage Services was the servicer of the Calvillos' note and deed of trust. The consent order does not encompass or concern Wells Fargo Bank's role as a trustee, and Appellants have not directed us to any evidence that Carrington Mortgage Services was subject to the consent order.

Second, the consent order expressly provides that its provisions are restricted to the parties and expressly states that it does not provide to any person or entity any benefit or legal or equitable right, remedy, or claim.[6] Although Wells Fargo Bank was a party to the consent order as a servicer of residential mortgages, the consent order does not provide any private right of action to the Cavillos. Because the consent order is inapplicable to Wells Fargo Bank as a trustee, and because it affords the Cavillos no right of action in support of their public policy complaints, Issue Two is overruled.

---

[6] The consent order states: "Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order."

11

### *Directed Verdict*

In Issue Three, the Cavillos argue the trial court entered a directed verdict in error because there was conflicting, probative evidence that would bar a directed verdict. In addition to the briefing inadequacies addressed above, the Cavillos have not presented for our consideration any directed-verdict analysis through the application of authority to the evidence. *See* TEX. R. APP. P. 38.1(i) (brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and record).

We decline to abandon our role as a neutral adjudicator and conduct an independent review of the voluminous record or to make the Cavillos' directed-verdict arguments for them, and instead restrict our examination to the evidence the Cavillos have referenced in their briefs. *See Valadez,* 238 S.W.3d at 845; *see also Chappell*, 414 S.W.3d at 321.

The Cavillos do not refer to any testimony or evidence presented or admitted at trial, other than the note and allonge, and the non-allonge versions of the note. And, as to this evidence, Appellants make the same arguments, often word-for-word, they made in Issue Two. Consequently, we conclude Appellants have failed to demonstrate that the trial court erred in granting Appellees' motion for directed verdict, and for the same reasons we overruled Issue Two, we overrule Issue Three.

### CONCLUSION

The trial court's judgment is affirmed.


                                        STEVEN L. HUGHES, Justice
November 30, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.


12