**AFFIRMED and Opinion Filed November 4, 2021**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00455-CV**

**AL WININGER AND BARBARA WININGER, Appellants**

**V.**

**U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF THE CITIGROUP MORTGAGE LOAN TRUST INC ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-HE3, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-03503-2019**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

Al and Barbara Wininger ("Borrowers"), pro se, appeal a final summary judgment in favor of U.S. Bank National Association ("USB"), trustee of a securitized loan trust, on USB's judicial foreclosure and breach of contract claims and their counterclaims.[1] In eight issues, Borrowers argue that USB was not entitled to foreclose on its lien as a matter of law and the trial court erred in entering summary

---

[1] USB is the trustee for the holders of the Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass Through Certificate Series 2005-HE3.

judgment on their counterclaims. As discussed below, we affirm the trial court's judgment.

## I. BACKGROUND

In 2005, Borrowers executed a Texas home equity note (the "Note") payable to WMC Mortgage Corporation ("WMC") and a deed of trust (the "Security Instrument") securing performance of the Note with the mortgaged property. The Security Instrument conveys the property to Joe E. Shaw, in trust, for the benefit of Mortgage Electronic Registration Systems, Inc ("MERS") as nominee for WMC and its successors and assigns.[2] WMC indorsed the Note in blank. In 2008, MERS assigned the Note and Security Instrument to USB (the "Assignment") and MERS recorded the Assignment in the Collin County real property records.

Although neither party details the succession of servicers for this loan throughout the years, the record reflects that the servicers have changed multiple

---

[2] MERS is a recognized "book entry system." *See* TEX. PROP. CODE ANN. § 51.0001(1) ("book entry system" means a national book entry system for "registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns"); *Morlock, L.L.C. v. Nationstar Mortg., L.L.C.*, 447 S.W.3d 42, 46 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The MERS System is designed to track transfers and avoid recording and other transfer fees that are otherwise associated with the sale of real property. *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03–11–00429–CV, 2012 WL 1839357, at *4 (Tex. App.—Austin May,18, 2012, pet. denied) (mem. op.). When a mortgage is executed through a MERS System member and registered in the MERS System, it is recorded in the real property records with MERS named on the instrument as nominee or mortgagee of record. *Robeson v. Mortg. Elec. Registration Sys, Inc.*, No. 02–10–00227–CV, 2012 WL 42965, at *5 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (mem. op.). While the mortgage is in effect, the original lender may transfer the beneficial ownership or servicing rights on the mortgage to another MERS System member, with MERS tracking these electronic transfers. *Id.* These assignments are not recorded in the real property records. *Id*; *Campbell*, 2012 WL 1839357 at *4.

times. Countrywide and Bank of America (together, "BOA") were among those servicing the loan for USB.

In May 2008, Borrowers and BOA executed a loan modification agreement requiring $1,435.35 monthly payments beginning July 1, 2008. The agreement raised the unpaid principal balance from $223,000 to $ 248,333.56.

That same year, Borrowers sued BOA. The nature of the lawsuit is unclear, but the record includes a settlement agreement order (the "Settlement"). Under the terms of the Settlement, BOA agreed to re-instate the loan effective August 1, 2012 in the principal amount of $229,312.95 and Borrowers agreed to resume monthly payments on that date.

Select Portfolio Servicing, Inc. ("SPS") acquired the servicing of the loan on September 1, 2012. On April 4, 2013, SPS responded to Debtors' inquiry about payments and stated that $1,806.74 payments (representing $1,435.35 in principal and $381.54 for escrow) had been received and credited for September, October, and November 2012, but no further payments had been received. Accordingly, the unpaid principal balance on the loan was $227,533.32.

By 2017, Shellpoint Mortgage Servicing ("Shellpoint") serviced the loan for USB. On February 10, 2017, Shellpoint sent Borrowers a notice of default and intent to accelerate. A notice of maturity/acceleration was sent to Borrowers on June 19, 2017. Both notices stated that the unpaid principal balance on the loan was $227,533.32.

The default was not cured. Consequently, USB filed this suit for breach of contract and judicial foreclosure. Borrowers answered, alleging that: (i) the loan does not exist; (ii) the loan was modified in 2008 and 2012; (iii) Barbara Wininger is not a debtor or signatory on the loan, (iv) USB is not the holder of the Note; and (v) the default notice was unlawful.[3] Borrowers also counterclaimed, complaining generally that USB's servicers failed to apply payments in accordance with the Settlement and improperly reported the loan as past due to credit bureaus.

USB moved for summary judgment on its breach of contract and foreclosure claims, and in support, attached the affidavit of Wilma Colon, Litigation Specialist for Shellpoint (the "Colon Affidavit"). The Colon Affidavit states that Shellpoint is the mortgage servicer for USB, and copies of the Note, Security Instrument, Assignment, and notices of default and acceleration from Shellpoint's business records are attached.

Borrowers responded to the summary judgment motion and included several attachments without explanation. The attachments include: the Settlement, a partial screen shot showing four 2012 payments to BOA, various correspondence to and from Debtors concerning the loan on assorted dates, newspaper and magazine articles, a partial screenshot of a 2012 credit report, a copy of a check dated August 1, 2012, excerpts from what appears to be a pleading in a prior suit between these

---

[3] On appeal, Borrowers do not challenge the inclusion of Barbara Wininger in the final judgment and have filed a notice of appeal on her behalf.

parties, and a copy of an opinion and judgment from this court in a prior suit.[4]

Borrowers also filed a cross-motion for summary judgment, arguing generally that USB does not have "a note or good title" and has misapplied or diverted payments and there are questions about which or how many lenders own the Note. Although Borrowers' motion referred to evidence, there was no evidence attached to the motion and Borrowers did not request that the court consider evidence filed outside the summary judgment record.[5]

On March 17, 2020, the court ruled on both summary judgment motions and entered a final judgment in favor of USB. Borrowers appeal from that judgment.

## II. ANALYSIS

### A. Summary Judgment on USB's Claims

Borrowers' first issue argues that the trial court's summary judgment was in error because USB has no standing to assert its claims, or alternatively, the summary judgment evidence raises a fact issue about USB's standing.

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant on a traditional motion for summary judgment has the burden of showing that no genuine

---

[4] In that case, we dismissed for inadequate briefing Wininger's appeal of the trial court's grant of summary judgment in favor of USB. *See Wininger v. USB*, No. 05-18-00684-CV, 2019 WL 966991, at *1 (Tex. App.—Dallas Feb. 28, 2019, no pet.) (mem. op.).

[5] One of the documents referred to, a securitization analysis prepared by a third party, was attached to Borrowers' amended motion to dismiss, which was filed twelve days before the summary judgment motion.

issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). If the movant satisfies this initial burden on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude a summary judgment. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

USB argues that it is a mortgagee authorized to foreclose because it is the last assignee of the deed of trust. We disagree. Chapter 51 of the Texas Property Code governs the right to enforce the deed of trust through nonjudicial foreclosure. *See* TEX. PROP. CODE ANN. § 51.002 (addressing non-judicial sale of real property under power of sale conferred by deed of trust or other contract lien); *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, pet. denied) (mem. op.) (property code section 51.002 authorizes a mortgagee to sell real property under a power of sale conferred by a deed of trust); *see also Morlock*, 447 S.W.3d at 47. Under this statute, a "mortgagee" is authorized to enforce a security agreement through a nonjudicial foreclosure sale, either directly, or through a mortgage servicer.[6]

---

[6] The statute defines "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *See id*. § 51.0001(4); *Morlock*, 447 S.W.3d at 47. It defines "security instrument" as "a deed of trust, mortgage, or other contract lien on an interest in real property." *See* TEX. PROP. CODE ANN. § 51.0001(6).

This case, however, involves USB's claim for judicial foreclosure. Indeed, "[a] lien securing repayment of a home-equity note may only be foreclosed upon by a court order." *Grady v. Nationstar Mortg., LLC*, No. 02-16-00481-CV, 2017 WL 5618690, at *1 n.2 (Tex. App.—Fort Worth Nov. 22, 2017, pet. denied) (mem. op.) (citing TEX. CONST. art. XVI, §50(a)(6)(D)); *see also Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593 (Tex. App.—Dallas 2012, no pet.).

The pleadings and proof for judicial and nonjudicial foreclosure differ; specifically, judicial foreclosure requires proof that the foreclosing party is the transferee of the note. *See De La Garza v. Bank of N.Y. Mellon*, No. 02-1-00427-CV, 2018 WL 5725250, at *8 (Tex. App.—Fort Worth, Nov. 1, 2018 no pet.) (mem. op) (citing Alan M. White, *Losing the Paper—Mortgage Assignments, Note Transfers, and Consumer Protection*, 24 Ly. Consumer L. Rev. 468, 479–80, 2012).

To be entitled to summary judgment for a judicial foreclosure, a movant must prove (1) the existence of and some privity to a financial obligation—i.e., the note; (2) the existence of and some privity to the lien securing it—i.e., the deed of trust or security instrument; and (3) a default on the loan. *De La Garza*, 2018 WL 5725250, at *7; TEX. R. CIV. P. 309. Of course, if the note has been transferred, the person or entity seeking to enforce it must prove the transfer by which the note was acquired. *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Here, the summary judgment evidence establishes that WMC transferred its possession of the Note to MERS by indorsing it in blank. An instrument is indorsed in blank if it does not identify a person to whom the indorsement makes the instrument payable. TEX. BUS. & COM. CODE ANN. § 3.205(a). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." *Id*. § 3.205(b); *see also Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 958 (Tex. App.—Dallas 2013, no pet.) (note indorsed in blank, becomes payable to bearer by transfer of possession alone); *see also Robeson,* 2012 WL 42965, at *4 ("An instrument containing a blank endorsement is payable to the bearer and may be negotiated by transfer of possession alone."); *Blizzard v. Select Portfolio Servicing*, No. 03-13-00716-CV, 2015 WL 5096710, at *3 (Tex. App.—Austin Aug. 27, 2015, no pet.) (mem. op.).

MERS then assigned the Note and Security Instrument to USB. When MERS executed the assignment, USB obtained all of MER's interests in the Note and Security Instrument, including the right to foreclose and sell the property securing the Note. *See Campbell*, 2012 WL 1839357 at *5.[7]

---

[7] Moreover, even without the Assignment, USB could enforce the Note. *See EverBank, N.A. v. Seedergy Ventures, Inc*., 499 S.W.3d 534, 543 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that "affidavit testimony that it possessed the note, as well as a copy of the note indorsed in blank . . . was sufficient to show that EverBank had standing to foreclose as the holder of the note"); *see also Cha v. Branch Banking & Trust Co.,* No. 05-14-00926-CV, 2015 WL 5013700, at *1 (Tex. App.—Dallas Aug. 25, 2015, pet. denied) (mem. op.) (photocopy of note attached to holder's affidavit sufficient as a matter of law to prove status as owner and holder).

Debtors failed to object to USB's summary judgment evidence. Therefore, any complaint about the authenticity or trustworthiness of the documents was waived. *See Calvillo v. Carrington Mortg. Services*, 487 S.W.3d 626, 633 (Tex. App.—El Paso 2015, pet. denied). Likewise, Borrowers adduced no evidence to controvert the remaining facts in the Colon Affidavit, including that (i) payments on the Note were not tendered when due; (ii) Debtors were provided with notices of default and acceleration; (iii) the default was not cured; and (iv) through August 30, 2019, at least $340,761.83 was due on the loan. This was sufficient to establish that Borrowers were in default on the loan. *See Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 362 (Tex. App.—Dallas 2007, pet. denied).[8]

Borrowers now argue, without explanation or authority, that the third-party securitization analysis creates a fact issue on standing.[9] This analysis, however, is not part of the summary judgment record and there is nothing to indicate the court considered any evidence outside that record. The scope of our review is limited to the summary judgment record upon which the trial court's ruling was based. *Chappell v. Allen*, 414 S.W.3d 316, 321 (Tex. App.—El Paso 2013, no pet.).

---

[8] In addition, while the evidence shows that payments were made August-November 2012, there is no evidence that any payments were made between December 2012 and July 23, 2019.

[9] Among other things, the report states that the Note was neither transferred nor negotiated by MERS and appears to challenge the chain of title based on the split-the note theory (stating that the Note and Security Instrument "have taken two distinctly different paths."

Moreover, Borrowers have failed to identify the fact issue the securitization analysis allegedly raises or provide argument and authority the issue precludes summary judgment. *See* TEX. R. APP. P. 38.1. Borrowers elected to proceed pro se, and we cannot make their arguments for them or ignore the rules of evidence and procedure in assessing their proof. We hold pro se litigants to the same standards as licensed attorneys. S*ee Washington v. Bank of N.Y.*, 362 S.W.3d 853,854 (Tex. App.—Dallas 2012, no pet.). Although we construe pro se briefs liberally, a brief fails if we are required to guess about the party's complaints, search the record for facts that may be favorable to a party's position, or conduct research that might support the contentions made. *Joseph v. Willis*, No. 05-16-00995-CV, 2017 WL 1427713, at *1 (Tex. App.—Dallas Apr. 18, 2017, no pet.) (mem. op.); *see also* TEX. R. APP. P. 38.1. We confine our review accordingly.

Therefore, on this record, we conclude that USB's summary judgement evidence establishes as a matter of law that it has standing to enforce the Note and Security Instrument and borrowers failed to raise a fact issue concerning such standing. *See Hood v. CIT Bank, NA*, No. 14-18-00496-CV, 2021 WL 629751, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) (mem. op.) (bank produced summary judgment evidence establishing its status as holder of the note and assignee of the deed of trust and debtor offered no controverting evidence); *see also* TEX. R. CIV. P. 166a(c). We resolve Borrowers' first issue against them.

**B.     Summary Judgment on Borrowers' Counterclaims**

Borrowers' remaining seven issues appear to challenge the denial of their motion for summary judgment based on breach of contract, the Texas Debt Collection Act, the Deceptive Trade Practices Act, "Good Faith and Fair Dealing," fraud, and breach of fiduciary duty. These claims, however, were not raised in Debtors' pleadings in this case, in their motion for summary judgment, or in response to USB's summary judgment motion. On appeal we may not consider new arguments or legal theories not presented to the trial court because summary judgments may only be granted upon grounds expressly asserted in the trial court by motion or response. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *Dealer Comput. Servs., Inc. v. DCT Hollister RD, LLC*, 574 S.W.3d 610, 624 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing TEX. R. CIV. P. 166a(c)). Consequently, any complaint about the denial of Debtors' motion for summary judgment based on these claims has not been preserved for our review. *See* TEX. R. APP. P. 33.1.

Debtors' summary judgment motion recites a litany of allegations labeled "facts," and then concludes:

> From the audit and other supporting documents, it is obvious that [USB] has many violations with this loan. They do not have a note or good title, they have misapplied and or diverted payments, there are questions who or how many lenders owns [sic] the note, where payments were applied, and why there has not been a principle [sic] reduction for the last 11 years. Considering the overwhelming facts, the

–11–

motion for summary judgment should be granted and move on to the counterclaim.

There was no evidence attached to the motion.

On appeal, Borrowers do not identify any legal causes of action that formed the basis of their motion (as supported by live pleadings) or cite to any evidence or authority demonstrating that they were entitled to judgment as a matter of law. *See* TEX. R. APP. P. 38.1. Under these circumstances, we cannot conclude the trial court's denial of Debtors' summary judgment motion was in error. Borrowers' remaining issues are resolved against them.

### III. CONCLUSION

Having resolved all of Borrowers' issues against them, we affirm the trial court's judgment.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200455F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

AL WININGER AND BARBARA
WININGER, Appellants

No. 05-20-00455-CV  V.

U.S. BANK NATIONAL
ASSOCIATION AS TRUSTEE FOR
THE HOLDERS OF THE
CITIGROUP MORTGAGE LOAN
TRUST INC ASSET-BACKED
PASS-THROUGH CERTIFICATES
SERIES 2005-HE3, Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-03503-
2019.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered November 4, 2021.